# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SWEPORTS, LTD., | ) | Case No. 12 B 14254 (ABG) |
| | ) | Hon. A. Benjamin Goldgar |
| | ) | |
| Debtor. | ) | **Hearing Date:    June 18 , 2014** |
| | ) | **Hearing Time:    9:30 a.m.** |

## SUMMARY OF FINAL AND SECOND APPLICATION OF
## NEAL L. WOLF, COUNSEL TO THE
## OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR
## ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

Name of Applicant:                              Neal L. Wolf

Authorized to Provide Professional
Services to:                                    Official Committee of Unsecured Creditors

Date of Retention:                              Effective December 12, 2012 by Order signed
                                                March 13, 2013

Periods for Which Compensation and
Reimbursement is Sought:                        June 1, 2013 through April 30, 2014 ("Second
                                                Period") and
                                                December 12, 2012 through April 30, 2014
                                                ("Final Period")[1]

---

[1]   Effective February 17, 2014, Neal Wolf and certain of his colleagues from his former law firm, Neal Wolf & Associates, LLC ("NW&A"), joined Much Shelist, P.C. ("Much Shelist").  This Application includes time billed and expenses incurred for the period from February 17, 2014, the date that Mr. Wolf and his colleagues joined Much Shelist, through April 30, 2014, the date the Court entered its Order Dismissing Chapter 11 Case (Docket No. 772).  As a means of breaking down the time and facilitating review of this final application by the Court and parties in interest, the final application shows separate fee and expense information and provides detailed narrative descriptions for what this final application terms the "Second Period" (June 1, 2013 through April 30, 2014).  The fee and expenses for the period December 12, 2012 through May 31, 2014 ("First Period") are shown separately and detailed narrative descriptions are also provided in the First Interim Application of Neal Wolf & Associates, LLC for Allowance of Compensation and Reimbursement of Expenses (Docket No. 362) ("First Interim Application") and are incorporated herein by reference.

4742863_3

Amount of Compensation Sought as Actual,
Reasonable, and Necessary:

Second Period: $775,735
Final Period: $1,133,492.74[2]

Amount of Expense Reimbursement Sought
as Actual, Reasonable, and Necessary:

Second Period: $6,580.95
Final Period:  $7,924.65[3]

Type of Fee Application:

Final and Second Period

This is the Applicant's final application and also a second application for the period covering June 1, 2013 through April 30, 2014.

The following summarizes the prior application(s) for compensation and reimbursement of expenses filed in this case by Mr. Wolf:

| Date Filed | Period Covered | Total Requested (Fees and Expenses) | Total Allowed (Fees and Expenses) |
|---|---|---|---|
| 8/1/2013 (Docket No. 362) | 12/12/2012 – 5/31/2013 | $484,417.26 | $408,530.98 |

The aggregate amount of fees and expenses paid to Mr. Wolf to date since the entry of the order for relief in this bankruptcy case (November 21, 2012) is $49,256.51.  The remaining amount of allowed fees and expenses for the First Period ($359,274.47) remains unpaid.  The Applicant waived all right to seek compensation or reimbursement for fees earned and expenses incurred between the commencement of this case (April 9, 2012) and the entry of the order for relief (November 21, 2012) as a condition to his employment as Committee counsel.

---

[2]  As reflected in the exhibits to this Application, the gross amount of final compensation is $1,258,462.50.  The $1,133,492.74 shown above is the net amount after deducting (a) the amount ($75,713.25) disallowed by the Court in its Order granting in part the First Interim Application  (Docket No. 435) ("First Fee Order") and (b) the amount paid to Neal Wolf by the Debtor in October 2013 ($49,256.51)

[3]  As indicated in Exhibit E attached hereto, the gross amount of expenses incurred during the Final Period is $8,097.68 without consideration of computer research expenses the Court does not allow.  The $7,924.65 expense request shown above is the net amount after deducting the amount ($173.03) disallowed by the Court in its First Fee Order.

4742863_3

Dated:  May 23, 2014

By:     /s/ *Dean C. Gramlich*            
       Neal L. Wolf (ARDC No.6186361)
       Dean C. Gramlich (ARDC No. 6191587)
       Jacob R. Lenzke (ARDC No. 6293218)
       MUCH SHELIST, P.C.
       191 North Wacker Drive, Suite 1800
       Chicago, Illinois 60606
       Main:    (312) 521-2000
       Fax:      (312) 521-2100
       Email:   nwolf@muchshelist.com
                 dgramlich@muchshelist.com
                 jlenzke@muchshelist.com

       *Attorneys for the Official Committee of*
       *Unsecured Creditors*

4742863_3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SWEPORTS, LTD., | ) | Case No. 12 B 14254 (ABG) |
| | ) | Hon. A. Benjamin Goldgar |
| | ) | |
| Debtor. | ) | **Hearing Date:** June 18, 2014 |
| | ) | **Hearing Time:** 9:30 a.m. |

**FINAL APPLICATION AND SECOND APPLICATION OF
NEAL L. WOLF, COUNSEL TO THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Neal L. Wolf ("Wolf" or "Applicant"), as counsel to the Official Committee of

Unsecured Creditors in the above-captioned chapter 11 case ("Committee"), hereby files (a) his

final fee and expense application in this chapter 11 case covering the period December 12, 2012

through and including April 30, 2014 ("Final Application") and his second fee and expense

application in this chapter 11 case covering the period June 1, 2013 through and including

April 30, 2014 ("Second Application and together with the Final Application, the "Application").

The Application also contains statistical information relating both to the Final Application and

the Second Application in Exhibits A, B-1, B-2, C-1, C-2 and E hereto.  The narrative

information contained herein, however, focuses solely on legal services rendered by the

Applicant and his colleagues during the period June 1, 2013 through April 30, 2014 ("Second

Period") and expenses incurred during the Second Period.

By this Application, Wolf seeks final approval and allowance of fees in the amount of

$1,133,492.74 and final reimbursement of expenses in the amount of $7,924.65, for a total of

$1,141,417.39 for the Final Period.  The amount of fees and expenses requested reflects (a) the

Court's reductions from the amount requested in the Applicant's first interim application and (b)

1

the amount paid by the Debtor to Wolf in October 2013. Wolf further requests that the Court

direct the Debtor to pay to Wolf the $1,141,417.39 in fees and expenses for which final

approval is sought. Wolf has submitted a proposed form of judgment requesting this relief.

## FACTUAL BACKGROUND

### A.   General Background

1.     As the Court is aware, the unsecured claims in this case are the result of disputes

that arose between the Debtor and certain of its former attorneys, officers and shareholders in

2006. These disputes resulted in a number of unsatisfied judgments against the Debtor. Three

members of the Committee (Michael Moody, Michael O'Rourke and John A. Dore) and a fourth

judgment creditor (Dr. Andrew Chenelle, and together with Messrs. Moody, O'Rourke and Dore,

the "Dore Plaintiffs") hold judgments granted by the Circuit Court of Cook County in the

aggregate amount of approximately $530,000 against the Debtor and assert additional claims in

excess of $2,300,000.

2.     The Debtor has appealed from those judgments to the Illinois Appellate Court

(together with the Circuit Court of Cook County, the "State Court"). On April 28, 2014, the

Illinois Appellate Court issued an opinion affirming that portion of the judgment relating to

Sweport's default under the promissory note pursuant to which the Dore Plaintiffs loaned

$500,000 to Sweports. However, the Illinois Appellate Court reversed on that portion of the

judgment relating to breach of contract arising from Sweports' unilateral termination of the Dore

Plaintiffs' stock interests in Sweports. The Dore Plaintiffs are currently proceeding with

collection on the damages arising from breach of the promissory note. The litigation before the

State Court (generally referred to herein as the "State Court Litigation") is further described in

detail in the Debtor's Third Amended Disclosure Statement (Docket No. 308), the Committee

objections to the Debtor's Second Amended Plan and Second Amended Disclosure Statement

(Docket No. 291), the Committee's First Amended Disclosure Statement (Docket No. 350) and

in additional pleadings in the record.

3.    On April 9, 2012, Michael Moody, Michael O'Rourke and John Dore

(collectively, the "Petitioning Creditors"), with Mr. Wolf acting as their counsel, filed an

involuntary petition against Sweports in this Court under chapter 11 of the Bankruptcy Code.

4.    On November 19, 2012, after considerable litigation over whether an order for

relief should be entered against the Debtor, the Debtor filed a motion consenting to such entry

(Docket No. 82).  The Court signed the order for relief on November 21, 2012 and it was

subsequently entered on the docket on November 26, 2012 (Docket No. 89).  Prior to the

dismissal of the case, the Debtor was a debtor in possession and remained in control of its assets.

The Court did not appoint an examiner or trustee in this case.

5.    On April 26, 2014, the Court filed its Order Denying Confirmation of Plan and

Statement (Docket No. 752) (the "Opinion").  The Opinion denied confirmation of both the

Third Modified and Second Amended Plan of the Debtor (with its seven prior versions, the

"Debtor Plan") and the Modified First Amended Plan of the Committee (with its two prior

versions, the "Committee Plan").  The Opinion further observed that any plan confirmation

appeared unlikely in the case and invited the Office of the United States Trustee ("U.S. Trustee")

to file a motion seeking dismissal or conversion.

6.    On April 8, 2014, the U.S. Trustee filed its Motion to Convert or, in the

Alternative, to Dismiss Chapter 11 Case and for Other Relief (Docket No. 763) ("Motion to

Convert/Dismiss").  The U.S. Trustee set the hearing on the Motion to Convert/Dismiss for

April 30, 2014.

4742863_3

7.      On April 30, 2014, the Court entered its Order Dismissing Chapter 11 Cases (Docket No. 772).

**B.      Retention of Neal L. Wolf and Neal Wolf & Associates, LLC and Prior Fee Award**

8.      On December 12, 2012, the U.S. Trustee appointed the Committee.  The five-member Committee consists of the three Petitioning Creditors, Lee N. Abrams and Perkaus & Farley, LLC (represented by John Perkaus, a principal of the firm).  The Committee asked Wolf to act as counsel to the Committee.  On January 14, 2013, the Committee filed an application with this Court seeking to retain NW&A as Committee counsel in this bankruptcy case (Docket No. 119).

9.      On March 13, 2013, the Court entered an Order approving the retention of Wolf, as counsel to the Committee, over the objections of the Debtor and several other parties.  *See* Docket. No. 194 ("Retention Order").  As a condition to the Court's approval of Wolf's retention, Wolf agreed to waive any administrative claim based on in excess of $200,000 of fees incurred in NW&A's capacity as counsel for the Petitioning Creditors.  *See* Bankruptcy Code § 503 (b)(3)(A) and (b)(4).

10.      On August 1, 2013, NW&A filed its First Interim Application.  The Debtor objected to the fees and sought substantial reductions.

11.      On October 1, 2013, the Court entered its Order granting the First Interim Application in part and denying it in part (Docket No. 435) ("First Fee Order").  The First Fee Order allowed total fees and expenses of $408,530.98.  However, the Debtor only had approximately 10% of the cash necessary to pay the fees and expenses awarded.  After deducting for the amount paid by the Debtor ($49,256.51), the amount due and owing under the First Fee Order remains at $359,274.47.

4

12.     On February 17, 2014, Wolf and the attorneys working with him as Committee counsel joined the Chicago office of Much Shelist.  On March 7, 2014, the Committee filed its Supplemental Application for Entry of an Order Authorizing the Employment of Much Shelist as Counsel to the Committee Effective as of February 17, 2014 in Substitution for Neal Wolf & Associates (Docket No. 732).  On March 10, the Court entered a minute order denying the foregoing application as unnecessary and advising undersigned counsel that no compensation would be allowed for the preparation of the application (Docket No. 733).

C.     **Overview of Services Rendered by Wolf and NW&A**

13.     As the Court has previously observed, this case has been highly contentious from its beginning.  Although the Committee and the Debtor engaged in a concerted effort to settle the case towards the close of the Second Period, no settlement occurred.

14.     The Committee was extremely active in the case.  During the Second Period, the Committee primarily focused its efforts in three areas.  First, as noted above, the Committee engaged in a concerted and good faith effort to settle various disputes with the Debtor and its principal George Clarke.  Mr. Wolf and Michael O'Rourke, one of the Petitioning Creditors and an experienced trial lawyer, primarily represented the Committee in the settlement negotiations.  These negotiations continued right up until the Court announced its March 26, 2014 Opinion denying confirmation of both chapter 11 plans.  Second, the Committee completed Rule 2004 document discovery in the case.  The completion of the discovery required the Committee to seek orders to compel production not only from the Debtor and its operating subsidiary, UMF Corporation ("UMF"), but also from a host of related parties.  By the end of September 2013, the Committee had completed document discovery and as a result obtained access to a whole host of documents relating to

5

UMF's financial performance over the last decade, its efforts to obtain outside investments,

the intellectual property owned by the Debtor, UMF and c2c Innovations, LLC ("c2c"),

another company formed by George Clarke, and the cleaning supply operations of UMF.

Third, the Committee successfully opposed the Debtor's efforts to confirm a chapter 11 plan

after the completion of a two-week evidentiary hearing in January 2014.  Unfortunately, the

Committee failed in its attempts to confirm its own liquidating plan.

15.    Notwithstanding the Committee's failure to confirm its Plan and the Court's

dismissal of the case, the Committee has performed important services for the statutory

committee in this case for which it deserves compensation.  Wolf and his colleagues have

provided quality legal services to the Committee in connection with document discovery,

analysis of the documents produced, litigation over plan confirmation and other areas.  Mr.

Wolf has personally engaged in concerted efforts to settle the case, a result encouraged by

the Court.  Mr. Wolf has performed these services without the provision of any retainer and

at the risk of being unable to achieve any substantial recovery.  Wolf admits that he seeks

this Court's approval of substantial compensation for the Second Period.  However, the case

has been the source of considerable litigation, including preparation for and completion of a

two-week trial, most of which involved presentation of the Debtor's case.  Wolf and his

three colleagues (attorneys Dean Gramlich and Jacob Lenzke and legal assistant Sandy

Holstrom) have done commendable work for the Committee.

16.    The Committee has itself assisted this core legal team, particularly at the

confirmation hearing where Michael O'Rourke acted as trial counsel not only for the

Petitioning Creditors but for the Committee.  Mr. Gramlich, an attorney with substantial

experience in the area of professional matters in bankruptcy cases, has exercised billing

6

judgment in reducing his own fees and the fees of his colleagues to an appropriate amount given the nature and complexity of the task.

17.     In a manner consistent with its prior rulings in this and other cases, the Court recently had occasion to rule again that it had authority to retain individual attorneys, not partnerships nor limited liability companies engaged in the practice of law.  *See* Docket No. 733 (Court's Order of March 10, 2014 denying the Committee's motion to retain the law firm of Much Shelist in substitution for NW&A).  As a result, Wolf has brought this Application as an individual.

### D.      Jurisdictional and Statutory Basis for this Application

18.     The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.  The venue of this Case and this Application is proper in accordance with 28 U.S.C. §§ 1408 and 1409.

19.     Wolf makes this Application pursuant to Bankruptcy Code §§ 330(a) and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), Rule 5082-1 of the Local Bankruptcy Rules, effective as of January 1, 2012 (the "Local Bankruptcy Rules"), and certain applicable provisions of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement Filed Under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58 (the "Guidelines")).

20.     As noted above, the Court dismissed this case on April 30, 2014.  This does not mean, however, that this Court lacks jurisdiction to consider this Final Application.  The great majority of courts who have addressed the issue have held that a bankruptcy court, notwithstanding dismissal, continues to have subject matter jurisdiction to consider and rule on final fee and expense applications submitted by professionals retained in the case under

7

Bankruptcy Code §§ 327 or 1103.[4]  "The bankruptcy court retains jurisdiction over fee

applications after a case has been dismissed …."  *In re Parklex Assocs., Inc.* 435 B.R. 195, 208

(Bankr. S.D.N.Y. 2010) (citing similar determinations by the Ninth Circuit in *In re Elias*, 188

F.3d 1160, 1164 (1999) (Fernandez, J., concurring and dissenting) and several bankruptcy court

holdings); *see also In re 5900 Assocs.*, *L.L.C.,* 326 B.R. 402, 410 (E.D. Mich. 2005) ( the

bankruptcy court has an "'inescapable duty'" to determine the reasonableness of attorneys' fee

awards even if the dismissal order did not reserve jurisdiction over attorneys' fees, quoting *In re*

*Lowe,* 97 B.R. 547, 548-49 (Bankr. W.D. Mo. 1987)); *In re Jemps*, 330 B.R. 258, 261-62 (Bankr.

Wyo. 2005) (notwithstanding debtor's stated intention to seek dismissal of the case immediately

after bankruptcy court's determination of a fee dispute, bankruptcy court still had jurisdiction to

determine dispute over reasonableness of secured lender fees under Bankruptcy Code § 506(b));

*In re Quaker Distributors, Inc.,* 189 B.R. 63, 68 (Bankr. E.D. Pa. 1995) (dismissal of chapter 11

case did not preclude bankruptcy court from hearing dispute over who had priority over retainer

paid to debtor).

     21.    It is true that some cases, *e.g., In re Mandalay Shores Cooperative Housing Ass'n,*

60 B.R. 22 (Bankr. M.D. Fla. 1986), rely on whether the bankruptcy court's dismissal order

expressly reserves jurisdiction over professional fee matters.  However, in the Opinion at pp. 23-

24, this Court makes clear its own view that a bankruptcy court cannot create subject matter

jurisdiction by means of a plan provision when it does not independently exist under the

standards set forth in 28 U.S.C. § 1334.  It follows that the lack of any reservation of jurisdiction

in the Court's Order dismissing this case does not have any effect on whether the Court does or

---

[4]   The bankruptcy court clearly had subject matter jurisdiction over professional fee matters prior to dismissal
because professional fee applications are administrative matters arising in a bankruptcy case.  See 28 U.S.C. §§
1334(b) (district courts have original but not exclusive jurisdiction over all matters "arising in … cases under title
11) and 157(b)(2) (core proceedings include matters concerning administration of the estate).

4742863_3

does not have subject matter jurisdiction to hear and determine this Final Application. However, this Court does have subject matter jurisdiction. It had such jurisdiction prior to the dismissal, and the dismissal does not divest this Court of jurisdiction over determining professional fee matters to the extent the fees and related expenses were incurred prior to the dismissal.

### EXHIBITS TO APPLICATION

22.     To assist the Court, the Debtor, the U.S. Trustee and the various parties in interest in analyzing the fees and expenses of Wolf and his colleagues during the Final and Second Periods and as otherwise required, Wolf has attached the following exhibits:

a.     In accordance with Local Rule 5082-1(B)(1)(e), **Exhibit A** hereto is a timekeeper summary showing the hourly rate of each attorney and legal assistant for whom compensation is requested, with the total number of hours expended and total compensation initially requested for each such attorney and legal assistant during the Final Period. With respect to some professionals, Exhibit A indicates amounts voluntarily written off. Exhibit A covers only the Final Period and does not account for prior court-ordered fee reductions or for the amount paid to Wolf in October 2013. It includes billing entries both before Mr. Wolf and his colleagues joined Much Shelist and after he joined Much Shelist. Exhibit A does not include time billed after dismissal of the case.

b.     In accordance with Local Rule 5082-1(B)(1)(a), **Exhibits B-1** and **B-2** hereto are summary lists showing all activity categories into which Wolf and his colleagues organized their work, the hours worked and total fees in each such category. Because of certain changes caused by the switch in accounting systems from one firm to the other, the Much Shelist time entries had to be placed under

9

different (although quite similar) matter numbers and names.  Exhibit B-1 shows

hours and total fees for both the Final Period and the Second Period during the time

Wolf and his colleagues practiced law with NW&A.  Exhibit B-2 shows hours and

total fees for both periods during the time Wolf and his colleagues practiced law with

Much Shelist.

      c.      In accordance with Local Rule 5082-1(B)(1)(d), **Exhibits C-1** and **C-2**

hereto are summaries showing each professional who performed work in a given

activity category, the hours worked in each activity category by each such

professional and the total compensation requested for that professional in each

activity category.  Like Exhibits B-1 and B-2, Exhibit C-1 and C-2 provides statistics

for both the Final and the Second Periods.  However, for the reasons explained in

sub-paragraph b immediately above, Wolf had to create Exhibit C-2 to reflect the

different activity categories used at Much Shelist.

      d.      In accordance with Local Rule 5082-1(B)(1)(b) and (C), **Exhibit D**

consists of  invoices for the Second Period.  Wolf has submitted monthly invoices for

the months June 2013 through that portion of February 2014 covering the work done

at NW&A.  The work done at Much Shelist (for the time period February 17, 2014,

the date Wolf commenced work at Much Shelist, through April 30, 2014) is

described in the invoices placed at the conclusion of Group Exhibit D.  Group

Exhibit D describes in detail each activity performed by a billing professional

divided by activity category and showing (i) the date the work was performed; (ii)

the name of the professional performing the work; (iii) a brief statement showing the

nature of the work; and (iv) the time expended on the work in tenth of an hour

4742863_3

increments.  For the period September 2013 through February 2014, Wolf added two

additional billing activities to assist the Court: Confirmation Hearing (Matter No. 9 at

NW&A) and Claims (Matter No. 10 at NW&A and Matter No. 6 at Much Shelist

(called "Claims Objections")).

      e.     In accordance with Local Bankruptcy Rule 5082-1(B)(1)(g), **Exhibit E**

hereto is a summary showing the expenses for which reimbursement is sought broken

down by expense category.  Exhibit E provides a breakdown of expenses for the

Final Period only.  Exhibit E also does not separately show the expenses for which

reimbursement is sought while Wolf and his colleagues practiced law at Much

Shelist.  The Much Shelist expenses consist of copying charges of $389.50 (ten cents

a page) and local cab fares of $63.00. Exhibit E combines these expenses with the

expenses incurred during the period Wolf and his colleagues practiced law at

NW&A.

23.     In addition to the foregoing Exhibits, **Exhibit F** hereto is the Declaration of

Dean C. Gramlich in support of the Application.  Wolf has also submitted a proposed form

of order approving the Application.

**NARRATIVE OF SERVICES RENDERED**

24.     In accordance with Local Bankruptcy Rule 5082-1(B)(1), the principal

activity categories performed by Wolf and his colleagues on behalf of the Committee during

the Second Period generally have been characterized according to the subject matter

involved as required by the Guidelines.[5]  As explained above, Much Shelist used different

activity categories to organize the time billed from February 17 through April 30, 2014.  The

---

[5]  Applicant summarized his activities and those of his colleagues for the period December 12, 2012 through May 31, 2013 in his First Interim Application.

4742863_3

separate fees for work done at Much Shelist are listed below along with the fees for similar

work done at NW&A. The principal activity categories are more particularly described as

follows:

    A.    <u>001 – General</u>

        Fees:  $15,802.50 (at NW&A) and $1,912.50 (at Much Shelist)
        Total Hours:  40.70 (at NW&A) and 4.50 (at Much Shelist)

    This activity category pertains to the general administration of the case and all work

that does not fit within more specific activity categories.  During the Second Period, Wolf

and the other NW&A attorneys communicated with the Committee and its financial

consultant (Pierre Benoit) about various issues and attended a hearing regarding the Norwex

patent litigation.  NW&A reviewed and analyzed the Debtor's monthly operating reports,

and communicated with the Debtor's counsel and the U.S. Trustee regarding same.  NW&A

attorneys also reviewed certain stay relief motions filed by the Debtor after the confirmation

hearing.  NW&A reviewed and analyzed the Debtor's objections to certain of the creditor

claims. Because of the amount of work done regarding claims and the objections thereto,

Wolf added an additional matter category (Matter No. 9) to assist the Court and other

persons in reviewing the billing.  This category also includes work done by Wolf in

representing the Committee in its successful opposition to the Debtor's appeal from the

Court's order granting derivative standing.  District Judge St. Eve issued a short opinion on

July 23, 2013 holding that the order was not final and that the Debtor had not shown any

basis for interlocutory review.

4742863_3

B.      002 – Discovery

Fees:  $157,650 – Total Hours:  373.60

In its First Interim Application, NW&A briefly summarized some of the problems the Committee has experienced in obtaining production of relevant financial documents from the Debtor and UMF under Bankruptcy Rule 2004 ("Rule 2004") and the substantial (in some instances, unnecessary) amount of time spent on discovery matters attempting to obtain production of documents from the Debtor and UMF.  Those problems continued in the Second Period.  During the summer of 2013, Committee attorneys largely completed the process of obtaining relevant financial documents from the Debtor and UMF.  NW&A associate Jacob Lenzke prepared logs and indices of documents produced and types of documents not produced and provided related summaries to the Debtor and to the Committee members.  He and legal assistant Sandy Holstrom processed documents produced and made them available for review by the Committee's financial consultant, Pierre Benoit & Associates ("PBAI").  The summaries prepared by Committee counsel greatly assisted the parties in keeping track of what the Debtor and UMF had produced because both tended to produce documents in small groups over a period that extended from December 2013 to July 2013.  Committee counsel had frequent conferences with Debtor counsel regarding document production issues and related correspondence.

The Committee determined that significant gaps existed in the documents the Debtor and UMF produced and therefore asked Wolf to commence Rule 2004 discovery against various third parties, including George Clarke, Christopher Leisner, c2c, Miller Cooper & Co. (the accounting firm for the Debtor and UMF) and the First Bank of Evanston (UMF's bank ("FBE")).  Applicant and his colleagues prepared motions seeking Rule 2004

13

discovery from all these parties.  In connection with FBE, the process of complying with

Committee Rule 2004 subpoenas took less than two weeks and one or two phone calls with

counsel for FBE.  FBE simply prepared a disc containing the documents requested and sent

a copy to Committee counsel.

 With all the other third parties, the Committee engaged in protracted litigation in

order to obtain financial, intellectual property and operational documents relating to the

Debtor, UMF and c2c.  NW&A attorneys Dean Gramlich and Jake Lenzke prepared motions

to compel and supplemental briefs on such issues as whether Miller had to review back-up

computer tapes to locate correspondence between its personnel and Mr. Leisner, UMF's

chief financial officer, and on whether some kind of common interest privilege covered all

communications between c2c and the University of Texas, even those that had nothing to do

with patent prosecutions.  c2c dragged the process out by, for example, producing privilege

logs with little or no information about the supposedly privileged documents.  At one point

c2c counsel tendered only the first page of c2c federal tax returns, stating that the other

pages did not matter.  NW&A had additional discussions with the Debtor's counsel about

these problems (some of which puzzled the Debtor's counsel) and separate meetings with

Tabet Divito, the law firm the Debtor paid to represent Mr. Leisner in the discovery

litigation on several occasions, and, on August 13, 2013 with Messrs. Queeney, DiVincenzo

and two more law firms Mr. Clarke hired to represent c2c.  During this period NW&A

prepared numerous draft orders for submission to the Court after soliciting comments from

opposing counsel.

 On September 11, 2013, the Court improved the situation markedly by denying Mr.

Leisner's motion to quash the Committee subpoena and ordering Mr. Leisner to cease

stonewalling and produce the documents requested by the Committee.  By mid-October

2013, Committee lawyers had successfully finished negotiations with Tabet Divito relating

to the document requests and Mr. Leisner had produced thousands of copies of UMF

financial documents apparently not a part of UMF's files.  As to c2c, attorneys Gramlich

and Lenzke prepared a motion for rule to show cause against c2c in October 2013.  The

Court granted the motion for rule to show cause and within a short period of time c2c had

turned over the purported common interest documents, Committee and c2c counsel agreed

to a new protective order and c2c gave up on its objections to allowing the Committee to see

practically all documents that supposedly contained trade secrets.  Negotiations with Miller

Cooper resulted in a three-stage production completed in late September.  The Committee

also issued a subpoena to Mr. Clarke personally.  He produced documents in October 2013

and an affidavit attesting to the completeness of his production.  The document produced by

Miller Cooper and Leisner proved to be of particular value to the Committee's investigation

and many were used as exhibits at plan confirmation.

In addition to the third party discovery, NW&A also reviewed and analyzed the

extensive Rule 2004 document subpoenas served by the Debtor on Committee members.

NW&A proposed and successfully negotiated a protocol for the treatment of documents

marked "confidential" under the various protective orders.  NW&A noticed up several

depositions relating to confirmation and attorney Gramlich prepared for the Miller Cooper

deposition.  Ultimately the Committee decided not to take any depositions of confirmation

witnesses to reduce costs.[6]  Attorney Gramlich assisted in arranging the telephonic

deposition of Mr. Benoit, the Committee's financial consultant, in Arizona; reviewed the

---

[6]   The Petitioning Creditors also took the depositions of Messrs. Clarke and Leisner during the gap period  in
connection with preparation for the trial on involuntary bankruptcy issues.

numerous exhibits the Debtor proposed to use in its examination; and defended Mr. Benoit's

deposition in December 9, 2013.  Attorney Gramlich also assisted in negotiating the

resolution of American Chartered Bank's objections to the Debtor's subpoena.

The Committee recognizes that the amount of time devoted to document discovery

might well be viewed as excessive.  However, it enabled the Committee to obtain

production of documents neither the Debtor nor UMF apparently had and these documents

proved valuable in opposing confirmation of the Debtor Plan.  Committee counsel does not

wish to litigate the discovery issues a second time, but much of the time devoted to

document discovery resulted from generally baseless opposition from third parties.

C.      003 – Exclusivity Period

Fees:  $1,345 – Total Hours:  2.60

NW&A conducted research regarding extension of the exclusivity periods established

under Bankruptcy Code § 1121.

D.      004 – Plan of Reorganization (Matter No. 003 at Much Shelist)

Fees:  $126,870 (at NW&A) and $31,447.50 (at Much Shelist)
Total Hours:  254.90 (at NW&A) and 54.40 (at Much Shelist)

This activity category includes most of the work relating to proposed Debtor and

Committee Plans.  Because this category contained practically all of the work done by

NW&A, particularly in December 2013 and January 2014, Wolf created a second activity

category to address issues directly relating to the confirmation hearing.  Naturally there is

some overlap.

Wolf attended several hearings in June and July 2013 regarding the Debtor and

Committee Plans, the Committee's objections to the Debtor's disclosure statements and

approval of the disclosure statements related to both Plans.  As noted in previous filings, the

16

Debtor's plan exclusivity period expired on May 20, 2013.  On May 30, 2013, the

Committee, after internal discussions, filed its own plan and accompanying liquidating trust

agreement, calling for the marketing of the Debtor's assets and the pursuit of litigation

against the Debtor's insiders.  In June 2013, Wolf and his colleagues prepared a disclosure

statement.  This required extensive document review (much of it relating to UMF's financial

history and the Debtor's representations regarding litigation prospects with the Committee

members, with companies who had allegedly infringed the Debtor's patents and with the

Debtor's insurance companies) and revision of disclosure statement drafts.  The Committee

also amended its Plan and the related liquidating trust agreement to incorporate comments

from the U.S. Trustee.  Wolf filed the amended Committee Plan and disclosure statement in

July 2013 and the Court approved the Committee's first amended disclosure statement on

July 31, 2013.  Wolf and his colleagues prepared a notice of the hearing on the Committee's

disclosure statement and a draft order approving it.  In October 2013, attorney Gramlich

reviewed the Debtor's new disclosure statement and also reviewed the Committee's

disclosure statement and made certain non-material changes prior to solicitation. In late

February 2014, attorney Gramlich prepared a revised Committee Plan and liquidating trust

agreement and filed it with the Court.

    The Committee retained PBAI as its financial consultant in July 2013.  Attorney Jake

Lenzke worked with PBAI in providing documents relating to the Debtor's intellectual

property, UMF's financial performance and other issues relating to the materials in the

Debtor's disclosure statements and discussing the Debtor's disclosures and financial

information with Mr. Benoit and his colleague Mr. Sparrow.  Benoit and Sparrow both

executed acknowledgements of the protective order in this case (Docket No. 50) before

reviewing materials.  In October 2013, attorney Gramlich made comments to PBAI

regarding Mr. Benoit's Federal Rule of Civil Procedure 26(a)(2) initial and supplemental

disclosure declarations and provided the declarations to the Debtor's counsel pursuant to the

confirmation hearing discovery order entered by the Court in September (Docket No. 395).

In addition to a discovery order, the Court entered two additional orders in

September 2013 relating to plan confirmation, an amended pre-trial order and an order

governing voting procedures for the two plans (Docket Nos. 398 and 399).  In November

2013, pursuant to the voting procedures order, attorney Gramlich prepared ballots for the

Committee Plan, a set of voting instructions for both plans, required notices and other

documents and worked with counsel for the Debtor and the Debtor's mailing service on plan

solicitation issues.  Attorney Gramlich met with Debtor's counsel at counsel's office on

November 25, 2013 to review the solicitation package.  Attorney Gramlich assisted

Committee members with questions about the solicitation packages and ballots, which were

unusually complicated because two different plans were under consideration.  After the

close of voting on the two plans, NW&A legal assistant Sandy Holstrom prepared a ballot

report for the Committee Plan derived from the local form.

Throughout the Second Period, Neal Wolf participated in extensive settlement

negotiations with Committee members, Mr. Weissberg, Mr. DiVincenzo (counsel for UMF

in this case and also a creditor) and on occasion Mr. Clarke.  These settlement negotiations

covered a large number of topics and included the exchange of term sheets and other

documents. They intensified in December and January and continued through March 26,

2014, the date the Court issued its Opinion.  Both sides treated the discussions as strictly

confidential.  As a result, the descriptions of the work Mr. Wolf did are limited to a general summary.

     E.     <u>004—Cash Collateral and DIP Financing</u> (Much Shelist only)

          Fees:  $390 (at Much Shelist) – Total Hours: .6 (at Much Shelist)

Mr. Wolf attended a meeting with Signature Bank to discuss financing of the Committee Plan.

     F.     <u>005 – Committee Meetings (Communications with Creditors in the Much Shelist invoice)</u>

          Fees:  $4,392.50 (at NW&A) and $3,715 (at Much Shelist)
          Total Hours:  8.80 (at NW&A) and 7.60 at (Much Shelist)

Neal Wolf and his colleagues Gramlich and Lenzke participated in full Committee meetings in August 2013, December 2013, March 2014 and April 2014, with the primary topics being plan confirmation, the terms of the Committee Plan, settlement and the effect of the Court's Opinion denying both the Debtor and Committee Plans.  Rather than have full Committee meetings, Wolf frequently communicated with members by e-mail and had a number of individual discussions with Committee chair Mike Moody and members Michael O'Rourke and Lee Abrams.  Because most of these discussions concerned a full settlement, the related entries are primarily in activity category 4 (Plan of Reorganization).

     G.     <u>006 – Fraudulent Transfer Litigation (Derivative Litigation in the Much Shelist Invoice)</u>

          Fees:  $1,207.50 (at NW&A) and $1,092.50 (at Much Shelist)
          Total Hours:  2.10 (at NW&A) and 1.9 (at Much Shelist)

NW&A attorneys reviewed and revised the fraudulent transfer pleadings regarding the 2007 debt for equity exchange and the formation of c2c.  In March 2014, attorney Gramlich researched issues relating to limitations periods and drafted a memorandum to the Committee.

19

      H.     <u>007 – Other Litigation</u>

          Fees:  $27,140 – Total Hours:  70.90

This activity category primarily covers NW&A's work relating to the Debtor's motion to assume its exclusive license agreement with UMF and preparing for the trial relating to approval of the motion.  NW&A attorneys reviewed and identified exhibits to be utilized at trial and prepared witness and exhibit lists per the Court's pre-trial order.  They also provided documents to PBAI in preparation for the hearing on the Committee's objections to the motion to assume.  In August 2013, the Committee and the Debtor entered into a stipulation allowing assumption of the exclusive license agreement by the Debtor and preserving the set-off and other rights of the estate relating to royalties owed to the Debtor. NW&A also communicated with the Committee regarding objections to certain proofs of claim, and attended the hearing on the motion by creditor Robert Queeney to vacate the disallowance of his claim.  This activity category also covers NW&A's analysis of developments in the ongoing State Court Litigation.

      I.     <u>008 – Employment and Fee Applications (Matter No. 002 in the Much Shelist invoice)</u>

          Fees:  $39,882.50 (at NW&A) and $23,140 (at Much Shelist)
          Total Hours:  101 (at NW&A) and 81.30 (at Much Shelist)

During the Second Period, NW&A prepared and filed its First Interim Application as counsel to the Committee, along with supporting documents (Docket No. 362), prepared a reply brief in support of the Application and attended the September 30, 2013 hearing on the Application.  As the Court may recall, the Court substantially reduced the amount sought by Wolf (Docket No. 435).  NW&A prepared and filed the application for the Committee to employ PBAI as its financial consultant in July 2013 and also prepared PBAI's first interim

20

fee application in February 2014.  At the Committee's request, NW&A reviewed the first

interim fee application of the Debtor's counsel, Ariel Weissberg, communicated with

Debtor's counsel regarding the revision of certain billing entries and filed an objection to his

first interim fee application at the end of January 2014.

In March 2014 attorney Gramlich and legal assistant Sandy Holstrom began the

preparation of this Final Application and the related exhibits.  Attorney Jake Lenzke

attended the March 12, 2014 hearing on approval of the PBAI first interim application,

which the Court approved in full (Docket No. 740). Attorneys Wolf and Gramlich

conducted research on the Court's jurisdiction to hear fee applications after dismissal.

The Court should note that Wolf wrote off substantial amounts of time in this activity

category, including all time spent on the preparation of the supplemental application to

employ Much Shelist as instructed by the Court.  The fees in this category amounted to

approximately six percent of total billings for Wolf during the Second Period.

J.    009 – Plan Confirmation Hearing (Matter No. 010 at Much Shelist)

Fees:  $262,540.00 (at NW&A) and $56,620 (at Much Shelist)
Total Hours:   530.10 (at NW&A) and 105.80 (at Much Shelist)

Plan confirmation work to some extent began when the Court entered a series of

orders in early September setting the confirmation hearing to commence on January 13,

2014, requiring the exchange of exhibits on December 23, 2013 and setting various other

dates.  Because of the volume of work done on plan confirmation issues during the Second

Period, Wolf set up a separate matter dealing with the confirmation hearing alone.

During September, October and November 2013, little work was placed in this new

category.  Wolf discussed with Committee members the expert disclosure filing of

Christopher Leisner, the Debtor's expert witness, and strategic issues relating the

21

confirmation hearing. Attorneys Gramlich and Lenzke prepared a stipulation with Debtor's

counsel on the handling of documents labeled "confidential." During the discovery

discussed above, Leisner and the other third parties had labeled most of the documents

produced "confidential" and subject to the protective order entered by the Court early in the

case. This stipulation was designed to allow the citation to and admission of documentary

evidence without placing documents under seal.

In December, NW&A attorneys conducted research on plan confirmation issues and

prepared a draft objection to the Debtor Plan filed on December 24, 2013 (Docket No. 613).

Attorney Gramlich prepared and filed a response to the various objections to the Committee

Plan, reviewed all the exhibits offered by the Debtor and prepared objections to certain of

the exhibits (Docket Nos. 644 and 625, respectively). Attorneys Gramlich and Lenzke

reviewed substantial numbers of documents produced by the Debtor, UMF and third parties

and worked with Neal Wolf to determine which documents would be offered as exhibits.

On December 23, and with assistance from Mike Moody, the Committee chair, attorney

Lenzke and legal assistant Sandy Holstrom finished the preparation of the Committee

exhibit binders and provided copies to the Court and to Debtor's counsel. Wolf worked

with the Committee members and PBAI on preparation for the trial and also prepared most

of the Committee's objection to the Debtor Plan.

During the confirmation hearing, Wolf acted as lead trial counsel for the Committee

and attorney Gramlich assisted him in court. In addition, Committee member Michael

O'Rourke acted as trial counsel for the Committee. In addition to trying the case, NW&A

attorneys analyzed exhibits and deposition transcripts of the Debtor's witnesses for use in

impeachment and the new versions of the Debtor Plan filed both before and during the

4742863_3

confirmation hearing and assisted in preparing Pierre Benoit for his testimony as the

principal Committee witness.  As the Court is well aware, attorneys on trial work lengthy

hours because of the need not only to try the case, but to prepare for the next days' hearing.

This case followed that familiar pattern.  Both sides had largely finished presenting their

evidence by January 24, 2014.  Attorney Gramlich represented the Committee at the

additional trial day on February 7, 2014 and prepared for final argument in connection with

that hearing.  Neal Wolf presented final argument on the two opposing plans on

February 20, 2014

      Subsequent to the Court's issuance of the Opinion, Committee attorneys reviewed

and analyzed the Opinion and considered various options for the Committee to pursue.

Attorney Gramlich drafted memos to the Committee on various topics related to the Opinion

and prepared a draft of a motion to reconsider.  Attorney Gramlich conducted research on

the finality of the Opinion and began preparation of an appeal.

      K.      <u>010 – Claims (Claims Objections (Matter No. 6 at Much Shelist)</u>

            Fees:  $19,012.50 (at NW&A) and $1,575 (at Much Shelist)
            Total Hours:  36 (at NW&A) and 2.7 (at Much Shelist)

      The claims filed by creditors and the objections filed thereto became important issues

in connection with voting and plan confirmation.  Wolf therefore established a separate

activity category regarding claims beginning in September 2013.

      In September 2013, certain of the Committee members filed objections to the claims

of UMF and several of the Debtor's lawyers.  *See* Docket Nos. 427-430.  Wolf and his

colleagues reviewed these objections as well as the objections filed by the Debtor to the

claims of the Committee members and other creditors (Docket Nos. 466-469 and 479-481)

in November 2013.  Attorney Jacob Lenzke provided claims information to PBAI and PBAI

23

used the information in preparing estimates of likely distributions under the Debtor Plan.

Committee counsel attended various hearings on the claims objections.  Attorney Dean

Gramlich prepared a motion to temporary allowance of claims for voting purposes (filed and

initially heard during the course of the confirmation hearing).  The Court granted the motion

in order to proceed with the resolution of other confirmation issues, including the absolute

priority rule.  *See* Opinion at p. 18 (noting that, in the context of the failure of the Debtor

Plan to comply with the absolute priority rule, all voting unsecured creditors except UMF

and DiVincenzo had voted against the Debtor Plan).

## DESCRIPTION OF EXPENSES INCURRED

25.     Wolf seeks reimbursement of its actual and necessary expenses incurred in

rendering services during the Final Period.  Both NW&A and Much Shelist typically

charged for expenses such as filing fees, investigative services, deposition transcripts,

charges related to service of process, long distance telephone and conference calls,

messenger services, postage and overnight courier (FedEx) charges, Pacer charges,

photocopying (in-house (ten cents per page at both firms) and outside service) and computer

research on LexisNexis.  In this case Wolf also shared with the Debtor the cost of mailing

out the solicitation packages. Based on prior Court rulings that computer research charges

should be treated as overhead, NW&A has not included its expenses for LexisNexis

research. The total amount of expenses for which reimbursement is sought for the Second

Period is $6,580.95.  **Exhibit E** hereto is a summary by type of all expenses incurred by

NW&A and Much Shelist during the Final Period.  It does not reflect the reduction in

expenses ($173.03) ordered by the Court in its First Fee Order.  After that reduction the total

amount requested is $7,924.65.  It also does not separately show the expenses incurred while

Wolf and his colleagues were at Much Shelist ($452.50).

26.     Wolf submits this Application under the standards set forth in Bankruptcy

Code § 330, which provides, in part, that:

> "the court may award to … a professional person employed under section 327
> or 1103 … reasonable compensation for actual, necessary services rendered
> by the … attorney and by any paraprofessional person employed by any such
> person; and reimbursement for actual, necessary expenses."

27.     NW&A has reviewed its time entries closely for any time it deemed

excessive, duplicative, or not reflective of value to the case.  Attorney Gramlich has used his

billing judgment to reduce fees in certain instances.  The two senior attorneys at NW&A –

Neal Wolf and Dean Gramlich – have a combined 67 years of experience in bankruptcy

practice.  Wolf and his colleagues has provided high quality services to the Committee in a

case involving substantial litigation and attendant briefing and court appearances.  Many of

the issues involved complex areas of bankruptcy and intellectual property law.   Wolf

completed the document discovery requested by the Committee and defeated confirmation

of the Debtor Plan.  Although the Court denied confirmation of the Committee Plan, that

factor alone does not establish a basis for denying fees for work done on that Plan.  As the

Court emphasized in a recent ruling on interim compensation sought by the Debtor's

counsel, the standard is whether particular services were beneficial in completing the case at

the time the services were  rendered.  The determination of issues relating to a liquidating

chapter 11 plan under the control of the creditors themselves was important to resolution of

the case.  The rates charged by NW&A are reasonable and commensurate with or below that

of the billing rates of other bankruptcy attorneys with similar levels of experience.  The

exhibits hereto identify the attorneys and legal assistants who rendered services to the

4742863_3

Committee in each of ten activity categories, along with the number of hours for each

individual and the total compensation sought in each category.  NW&A has staffed its

representation at all times to avoid duplication of effort.  The Court should also consider the

degree of risk Wolf undertook in representing the Committee.

### NOTICE; NO PRIOR APPLICATION; NO SHARING OF COMPENSATION

28.     NW&A has served this Application, any exhibits thereto, and notice thereof, on:

(a) counsel to the Debtor; (b) the U.S. Trustee; and (c) any other persons who have formally

appeared and requested electronic service in this case pursuant to Bankruptcy Rule 2002 and

local rule.  All other persons, including the Debtor's creditors as reflected in the Schedule F

previously filed by the Debtor's counsel on November 28, 2012, were served by United States

mail with a separate notice of this Application and the related hearing date.  The notice contains

instructions on obtaining a copy of the entire Application at no additional charge.  Wolf submits

that no other or further notice need be given under the circumstances.

29.     No prior application for the relief requested herein has been made by the

Committee to this or any other Court.

30.     In connection with the compensation and expenses sought herein, neither Mr.

Wolf nor NW&A have not received or been promised any compensation for services

rendered or to be rendered in any capacity in connection with this case other than as set forth

herein.

31.     No agreement or understanding exists between Mr. Wolf or NW&A and any

third party for the sharing of compensation.

32.     All of the services for which Wolf requests compensation were rendered

solely at the request of the Committee and not on behalf of any other person or entity.

26

**WHEREFORE**, Mr. Wolf respectfully requests that the Court enter an Order:

a.      Allowing compensation for legal services rendered during the Second Period in the

amount of $775,735;

b.      Allowing reimbursement of expenses incurred during the Second Period in the

amount of $6,580.95;

c.      Allowing compensation for legal services rendered during the NW&A Final Period

in the amount of $1,133,492.74;

d.      Allowing reimbursement of expenses in the amount of $7,924.65;

e.      Ordering the Debtor to pay to Mr. Wolf the fees and expenses approved by the

Court; and

f.      Granting such other and further relief as the Court deems appropriate.


Dated: May 23, 2014

                                OFFICIAL COMMITTEE OF UNSECURED
                                CREDITORS


                                By:  ___/s/ *Dean C. Gramlich*_____
                                     Neal L. Wolf (ARDC No.6186361)
                                     Dean C. Gramlich (ARDC No. 6191587)
                                     Jacob R. Lenzke (ARDC No. 6293218)
                                     MUCH SHELIST, P.C.
                                     191 North Wacker Drive, Suite 1800
                                     Chicago, Illinois 60606
                                     Main:   (312) 521-2000
                                     Fax:    (312) 521-2100
                                     Email:  nwolf@muchshelist.com
                                             dgramlich@muchshelist.com
                                             jlenzke@muchshelist.com

                                     *Attorneys for the Official Committee of*
                                     *Unsecured Creditors*

4742863_3