UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SWEPORTS, LTD., | ) | No. 12 B 14254 |
| | ) | |
| Debtor. | ) | Judge Goldgar |

**MEMORANDUM OPINION**

Before the court in this dismissed chapter 11 case are two applications for compensation: the second and final application of Neal L. Wolf ("Wolf") as counsel to the Official Committee of Unsecured Creditors, and the final application of Pierre Benoit & Associates, Inc. ("Benoit"), financial consultant to the Committee. For the reasons discussed below, the applications will be denied for lack of jurisdiction.

**1. Background**

The chapter 11 case was filed on April 9, 2012, originally as an involuntary case. (Dkt. No. 1). The debtor, Sweports, Ltd., eventually consented to an order for relief in November 2012, and thereafter the case was treated as a voluntary one with Sweports as debtor-in-possession.

Shortly after the order for relief was entered, the U.S. Trustee appointed an Official Committee of Unsecured Creditors under section 1102 of the Bankruptcy Code, 11 U.S.C. § 1102(a)(1). The Committee sought permission to retain Wolf as its counsel, and that request was granted. Much later, the Committee sought permission to retain Benoit as its financial consultant. That request was also granted.

Meanwhile, Sweports proposed a plan of reorganization, and when the exclusivity period

lapsed, the Committee filed a plan of its own.

In January 2014, after extensive litigation, the court held an evidentiary hearing on confirmation of the competing plans. At the end of March 2014, the court issued a lengthy written order in which it denied confirmation of both the Sweports plan and the Committee plan. The order not only denied confirmation, it invited the U.S. Trustee to move under section 1112(b) to convert or dismiss the case.

The U.S. Trustee accepted the invitation and moved for conversion to chapter 7 or alternatively for dismissal. When the motion was presented on April 30, 2014, no party in interest sought conversion, and no party opposed dismissal. The motion was therefore granted and the case dismissed. (Dkt. No. 772). The dismissal order said simply: "This case is dismissed." (*Id.*). On May 15, 2014, the case was closed. (Dkt. No. 787).

On May 23, 2014, nearly a month after the case was dismissed and more than a week after it was closed, Wolf filed his second and final application for compensation. (Dkt. No. 788).[1] In the application, Wolf requests $775,735 in attorney's fees and $6,580.95 in expenses for the period June 1, 2013, to April 30, 2014, and $1,133,492.74 in attorney's fees and $7,924.65 in expenses as final compensation. (*Id.*). On May 28, 2014, Wolf filed a final application for Benoit seeking $95,058.75 in fees and $1,659.38 in expenses. (Dkt. No. 791). Sweports objects to the applications, arguing the court lacks jurisdiction to consider them.

## 2. Discussion

The applications will be denied for lack of jurisdiction. Because the case has been

---

[1] Wolf and Benoit did not move to reopen the bankruptcy case under section 350(b), 11 U.S.C. § 350(b), or pay the reopening fee.

dismissed, there is no longer an estate from which Wolf and Benoit can be paid and so no point in considering whether and how much they should be paid from it. The applications are moot.

Section 327(a) of the Code permits a trustee to employ professionals, including attorneys. 11 U.S.C. § 327(a). In the case of a committee appointed under section 1102 of the Code, section 1103(a) authorizes the committee to employ professionals, 11 U.S.C. § 1103(a), and section 328(a) authorizes the committee to employ professionals under section 327(a), 11 U.S.C. § 328(a). Under sections 330(a)(1)(A) and (B), the bankruptcy court is authorized to award reasonable compensation and reimbursement of expenses to any professional employed under sections 327 or 1103. 11 U.S.C. §§ 330(a)(1)(A), (B). Committee professionals seeking compensation – professionals like Wolf and Benoit – can apply to the court to have their compensation approved under section 330. *See In re Northwest Airlines Corp.*, 382 B.R. 632, 644 (Bankr. S.D.N.Y. 2008); *In re Recycling Indus., Inc.*, 243 B.R. 396, 400 (Bankr. D. Colo. 2000).

But an application under section 330 is necessary and appropriate only "when a professional is seeking an award payable from the [bankruptcy] estate." *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 994 (Bankr. N.D. Ill. 1990). That is because "'[t]he funds of a bankruptcy estate are trust funds. The Court has a duty to see that these funds are administered in a manner consistent with the intent of the Bankruptcy Code.'" *Id.* at 994 (quoting *In re Ross*, 88 B.R. 471, 475 (Bankr. M.D. Ga. 1988)). When a professional will be compensated from a source other than the estate, the professional "need not, and should not," apply to the bankruptcy court to have his compensation approved. *Id.*; *Barron v. Countryman*, 432 F.3d 590, 595 (5th Cir. 2005) (noting that the "Code requires court approval [of compensation] paid *from the estate*

*of the debtor*" and not "from a source other than the debtor's estate" (emphasis in original)).

In this case, there is no longer a bankruptcy estate. The case was dismissed on April 30. Unless the court "orders otherwise," the dismissal of a bankruptcy case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case . . . ." 11 U.S.C. § 349(b)(3). The estate itself ceases to exist. *Koo v. VNO Shops on Lake (In re Koo)*, No. CC-12-1558(KiTaKu), 2013 WL 5460138, at *3 (B.A.P. 9th Cir. Oct. 1, 2013) ("The dismissal order terminates the bankruptcy estate"); *Commonwealth v. Pappalardo (In re Steenstra)*, 307 B.R. 732, 738 (B.A.P. 1st Cir. 2004); *Jefferson-Pilot Inves., Inc. v. Capital First Realty, Inc.*, No. 10 C 7633, 2012 WL 1952656, at *3 (N.D. Ill. May 29, 2012); *In re Slaughter*, 141 B.R. 661, 663 (Bankr. N.D. Ill. 1992) (noting that "dismissal terminates the estate"). The court here did not "order otherwise," and the Sweports bankruptcy estate consequently ceased to exist on April 30, 2014.

Because there is no longer a bankruptcy estate, there is no longer an estate from which compensation can be paid to Wolf or Benoit. *Cf. Jefferson-Pilot*, 2012 WL 1952656, at *3 (noting that when there is "no longer an estate," there is no longer any "cash in which the estate has an interest" (internal quotation and ellipses omitted)). With the estate's disappearance, the court's duty to oversee its administration, *see McDonald*, 114 B.R. at 994, has likewise disappeared. At this stage, reviewing the two applications from Wolf and Benoit and making determinations under section 330 about the reasonableness of their compensation would be pointless, a purely academic exercise having no effect on Wolf, Benoit, Sweports, or anyone else.

A federal court has no authority to "give opinions . . . upon abstract propositions." *McKinney v. Indiana Mich. Power Co.*, 113 F.3d 770, 772 (7th Cir. 1997). When a court "can no

longer 'affect the rights of litigants,'" the matter before it is moot. *Worldwide Street Preachers' Fellowship v. Peterson*, 388 F.3d 555, 558 (7th Cir. 2004) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). Mootness is a jurisdictional doctrine. *Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008). Because the Sweports bankruptcy case has been dismissed and there is no estate from which Wolf or Benoit can be compensated, the applications of Wolf and Benoit for compensation from the estate are moot. There is no jurisdiction to decide them.

When the case was dismissed on April 30 and Wolf announced his intention to file post-dismissal fee applications, the court expressed these same jurisdictional concerns. Responding to the court's concerns, Wolf and Benoit cite in their applications several decisions holding that after a bankruptcy case is dismissed, the bankruptcy court retains jurisdiction to entertain applications from professionals seeking compensation. *See In re Parklex Assocs., Inc.*, 435 B.R. 195 (Bankr. S.D.N.Y. 2010); *In re Jemps, Inc.*, 330 B.R. 258 (Bankr. D. Wyo. 2005). The Sixth Circuit reached the same conclusion in *Dery v. Cumberland Cas. & Surety Co. (In re 5900 Assocs., Inc.)*, 468 F.3d 326 (6th Cir. 2006). There are other decisions. *See, e.g., In re MJM Mgmt., LLC*, No. 2:13-bk-28734-TD, 2014 WL 1884340, at *4 (Bankr. C.D. Cal. May 12, 2014).

These decisions are unpersuasive. *Parklex* merely makes the bald declaration that "the bankruptcy court retains jurisdiction over fee applications after a case has been dismissed." *Parklex*, 435 B.R. at 208. *MJM* does the same. *MJM*, 2014 WL 1884340, at *4. *Jemps*, which involved fees under section 506(b), not under section 330, lacks even the bald declaration. *Jemps*, 330 B.R. at 261-62. Only the Sixth Circuit in *5900 Assocs.* confronted the effect of the bankruptcy estate's disappearance once the case is dismissed. The court found the estate's non-existence beside the point, reasoning (1) that the terms of section 330 are not limited "to fees that

will be drawn from the bankruptcy estate," and (2) that section 329 permits disgorgement of fees even when not paid from the estate. *5900 Assocs.*, 468 F.3d at 330.

As the court in *McDonald Bros.* explained, however, compensation under section 330 "is necessarily payable from the estate" because section 503(b)(2) makes the compensation awarded an administrative expense entitled to priority under what was then section 507(a)(1), now section 507(a)(2). *McDonald Bros.*, 114 B.R. at 994. As for section 329, that provision applies to compensation of debtor's counsel even when not paid from the estate because section 329 has a purpose different from the purpose of section 330. Section 330 is designed to protect the estate; section 329 is designed to protect debtors. *Id.* at 995. The Fifth Circuit takes the *McDonald Bros.* view of section 330. *See Barron*, 432 F.3d at 595; *see generally* John R. Hardison, *Approval of Attorneys' Fees in Dismissed Cases*, Am. Bankr. Inst. J., June 2013, at 80 (suggesting that *5900 Assocs.* "may have been a case of 'bad facts making bad law.'").[2]

Because the Sweports bankruptcy case has been dismissed, the applications of Wolf and Benoit for compensation are moot. The applications will be denied for lack of jurisdiction.[3]

---

[2] The decisions Wolf and Benoit cite hold that a bankruptcy court always retains jurisdiction post-dismissal to consider applications for compensation. As Sweports notes, other decisions hold that a bankruptcy court has jurisdiction to consider post-dismissal applications only when jurisdiction is expressly retained. *See, e.g., Iannini v. Winnecour*, 487 B.R. 434, 438-39 (W.D. Pa. 2012); *In re Advanced Computer Tech. Act, Inc.*, No. 12-4454, 2013 WL 5661203, at *1 (D.P.R. Oct. 15, 2013). These decisions, too, fail to address the effect of dismissal on the bankruptcy estate, but Sweports is right that under them there would be no jurisdiction to consider Wolf and Benoit's applications. The dismissal order here said only that "[t]his case is dismissed." (Dkt. No. 772). The court did not retain jurisdiction for any purpose.

[3] This decision, it should be emphasized, is strictly jurisdictional. The decision concerns the court's power to decide Wolf and Benoit's rights to be paid from a bankruptcy estate that no longer exists. It is not a decision that Wolf and Benoit have no rights under non-bankruptcy law to be paid from some other source, as *5900 Assocs.* wrongly suggests. *See 5900 Assocs.*, 468 F.3d at 329-30 (stating incorrectly that "[f]ees in a bankruptcy proceeding are governed by federal, not state law" and that "§ 330 is the sole mechanism by which fees may be

### 3. Conclusion

The second and final application of Neal L. Wolf as counsel to the Official Committee of Unsecured Creditors (Dkt. No. 788), and the final application of Pierre Benoit & Associates, Inc., financial consultant to the Committee (Dkt. No. 791) are denied for lack of jurisdiction. A separate order will be entered consistent with this opinion.

Dated: June 18, 2014

_____
A. Benjamin Goldgar
United States Bankruptcy Judge

---

enforced"). Whether Wolf and Benoit have any such rights would have to be determined in some other forum and so is a matter on which this court takes no position.