**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SWEPORTS, LTD., | ) | Case No. 12 B 14254 (ABG) |
| | ) | Hon. A. Benjamin Goldgar |
| | ) | |
| Debtor. | ) | **Hearing Date:  July 15, 2015** |
| | ) | **Hearing Time:  10:00 a.m.** |

**SUMMARY OF FIRST AMENDED FINAL APPLICATION OF
NEAL L. WOLF, COUNSEL TO THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Name of Applicant:                              Neal L. Wolf

Authorized to Provide Professional
Services to:                                         Official Committee of Unsecured Creditors

Date of Employment:                          Effective December 12, 2012 by Order signed
                                                             March 13, 2013

Periods for Which Allowance of           ***First Sub-period:***
Compensation and Reimbursement of     December 12, 2012 through May 31, 2013
Expenses is Sought:                             (Interim Allowance Previously Granted)
                                                             ***Second Sub-period:***
                                                             June 1, 2013 through April 30, 2014, and
                                                             ***Third Sub-period:***
                                                             May 1, 2014 through January 28, 2015

Amount of Compensation and Expenses   ***First Sub-period:***
Sought:                                               $408,530.98 (amount previously allowed)
                                                             ***Second Sub-period:***
                                                             $775,735.00 (Comp.); $6,407.92 (Exp.)
                                                             ***Third Sub-period:***
                                                             $264,067.50 (Comp.); $2,566.49 (Exp.)

                                                             **Total:**
                                                             $1,448,333.48 (Comp.); $8,974.41 (Exp.)

This is the First Amended Final Application of Neal L. Wolf, Counsel to the Official Committee of Unsecured Creditors, for Allowance of Compensation and Reimbursement of Expenses ("First Amended Final Application").  Applicant was formally employed as counsel to the Committee on December 12, 2012.  On August 1, 2013, Applicant filed an application for interim allowance of compensation and reimbursement of expenses ("2013 Interim Application") for the period from December 12, 2012 through May 31, 2013 ("First Sub-period").  On October 1, 2013, the Court entered an order allowing the interim application in part and disallowing the interim application in part ("October 2013 Interim Order").  The aggregate amount of the interim application that was allowed was $408,530.98.  Of that amount, the Debtor has paid only $49,256.51, leaving a balance due of $359,274.47.  The following chart summarizes the circumstances surrounding the 2013 Interim Application:

| DATE APPLICATION FILED | PERIOD COVERED ("FIRST SUB-PERIOD") | TOTAL REQUESTED FEES AND EXPENSES | TOTAL ALLOWED FEES AND EXPENSES | TOTAL AMOUNT PAID IN NOV. 2012 | TOTAL AMOUNT DUE AND UNPAID |
|---|---|---|---|---|---|
| 8/1/2013 (Docket No. 362) | 12/12/2012 – 5/31/2013 | $484,417.26 | $408,530.98 | $49,256.51 | $359,274.47 |

On May 23, 2014, Wolf filed an application (then designated by Wolf as a "final" application) for allowance of compensation and reimbursement of expenses ("2014 Application") for the period from June 1, 2013 through April 30, 2014 ("Second Sub-period").  On June 18, 2014, the Court denied the 2014 Application on jurisdictional grounds.  On January 9, 2015, the United States Court of Appeals for the Seventh Circuit entered a Final Judgment reversing the Bankruptcy Court's denial of the 2014 Application, awarding costs to Wolf, and remanding the case to the Bankruptcy Court for consideration of Wolf's fee application.

In this First Amended Final Application, Wolf seeks allowance of compensation and reimbursement of expenses for legal services performed by Wolf and his colleagues during the First Sub-period (for which $359,274.47 remains due and unpaid), the Second Sub-period (for which the Bankruptcy Court denied compensation on jurisdictional grounds), and the Third Sub-period (during which Wolf prosecuted his appeal to the Seventh Circuit and sought to defend his right to collect the unpaid amount of the interim award Wolf had received for work performed during the First Sub-period).

Dated:  March 9, 2015

By: ____/s/ *Neal L. Wolf*_____
        Neal L. Wolf (ARDC No.6186361)
        MUCH SHELIST, P.C.
        191 North Wacker Drive, Suite 1800
        Chicago, Illinois 60606
        Main:   (312) 521-2000
        Fax:    (312) 521-2100
        Email:  nwolf@muchshelist.com

        *Attorneys for the Official Committee of*
        *Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SWEPORTS, LTD., | ) | Case No. 12 B 14254 (ABG) |
| | ) | Hon. A. Benjamin Goldgar |
| | ) | |
| Debtor. | ) | **Hearing Date:    July 15, 2015** |
| | ) | **Hearing Time:    9:30 a.m.** |

**FIRST AMENDED FINAL APPLICATION OF NEAL L. WOLF,
COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Neal L. Wolf ("Wolf" or "Applicant"), counsel to the Official Committee of Unsecured Creditors in the above-captioned chapter 11 case ("Committee"), respectfully requests that the Court enter an order (1) allowing him final compensation in the amount of $1,448,333.48 and reimbursement of expenses in the amount of $8,974.41, which together aggregate $1,457,307.89, (2) entering a final judgment in favor of Wolf and against Sweports in the amount of such allowed compensation and reimbursement of expenses, and (3) granting such other relief as is just and proper.

In this First Amended Final Application, Wolf seeks, *inter alia*, allowance of compensation and reimbursement of expenses for legal services rendered by Wolf and other professionals operating under Wolf's supervision in connection with (1) Sweports' chapter 11 case, (2) Wolf's successful appeal to the United States Court of Appeals for the Seventh Circuit from this Court's June 18, 2014 order denying the 2014 Application, and (3) the ongoing attempt by Wolf to defend and collect the amount of this Court's October 2013 Interim Order.  In this First Amended Final Application, Wolf requests that the full allowed amount of compensation

1

and reimbursement of expenses be incorporated into a single order and judgment that may be enforced in accordance with applicable and appropriate law.

This First Amended Final Application covers the period from December 12, 2012, the effective date of Wolf's employment as counsel to the Committee, through January 28, 2015, a period of more than 25 months ("Full Application Period"). During the Full Application Period, Wolf was affiliated with two law firms, Neal Wolf & Associates ("NW&A"), of which Wolf was the sole member, and Much Shelist, P.C. ("Much Shelist"), of which Wolf is an equity partner. On February 17, 2014, Wolf and his colleagues at NW&A joined Much Shelist. The Full Application Period can be divided into three sub-periods.

*The First Sub-period.* The First Sub-period was the period from December 12, 2012 through May 31, 2013. This sub-period was the subject of the First Interim Application of Neal Wolf & Associates, LLC, Counsel for the Official Committee of Unsecured Creditors, for Allowance of Compensation and Reimbursement of Expenses ("August 2013 Interim Application"). A true and correct copy of the August 2013 Interim Application is attached hereto as Exhibit A, and is incorporated herein by reference. On October 1, 2013, the Court entered an interim order allowing compensation and reimbursement of expenses in the aggregate amount of $408,530.98 for the First Sub-period. Of that amount, Sweports has paid Wolf only $49,256.51, leaving a balance due of $359,274.47 for the First Sub-period.

*The Second Sub-period.* The Second Sub-period was the period from June 1, 2013 through April 30, 2014. The Second Sub-period was the subject of the 2014 Application, which was filed by Wolf on May 23, 2014, and which this Court denied on jurisdictional grounds. A true and correct copy of the 2014 Application is attached hereto as Exhibit B, and is incorporated herein by reference.

2

*The Third Sub-period.*  The Third Sub-period, which has not been the subject of any prior applications for allowance of compensation and reimbursement of expenses, covers the period from May 1, 2014 through January 28, 2015.  As noted above, legal services rendered and costs incurred during the Third Sub-period were exclusively related to [i] Wolf's then-final fee application and tasks related thereto, [ii] Wolf's successful appeal to the United States Court of Appeals for the Seventh Circuit from this Court's June 18, 2014 order denying the 2014 Fee Application, and [iii] the ongoing attempt by Wolf to defend and collect the amount of this Court's October 2013 Interim Order.  The total amount of compensation and expenses for which Wolf seeks allowance for the Third Sub-period is $265,314.39.  This amount is comprised of fees of $262,860.00 and expenses of $2,454.39.  The categories of legal work performed during the Third Sub-period, the attorneys and legal assistants who provided those services, the hours attributable to those professionals, and the resulting legal fees are reflected in the following chart:

| THIRD SUB-PERIOD FEES (MAY 1, 2015 – JANUARY 29, 2015) | | | | | | |
|---|---|---|---|---|---|---|
| | PREPARATION OF FEE APPLICATION AND OTHER MISCELLANEOUS TASKS RELATING THERETO INCLUDING RESEARCH REGARDING POST-DISMISSAL JURISDICTION OF BANKRUPTCY COURT | | APPEAL TO UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT | | COLLECTION OF 2013 INTERIM AWARD | |
| NAME | HOURS | AMOUNT | HOURS | AMOUNT | HOURS | AMOUNT |
| Neal L. Wolf | 12.8 | $  8,320.00 | 32.40 | 21,060.00 | 1.30 | $     845.00 |
| Dean C. Gramlich | 43.4 | 24,955.00 | 237.60 | 136,620.00 | 114.10 | 65,607.50 |
| John A. Benson, Jr. | | | .50 | 175.00 | .20 | 70.00 |
| Jacob R. Lenzke | 4.3 | 1,182.50 | | | 2.10 | 577.50 |
| Christine Ceja Rager | | | 3.50 | 752.50 | | |
| Sandy Holstrom | 15.4 | 2,695.00 | | | | |
| **TOTAL** | **75.9** | **$37,152.50** | **274.00** | **$158,607.50** | **117.70** | **$67,100.00** |

3

| GRAND TOTAL | |
| --- | --- |
| HOURS | AMOUNT |
| 75.90 | $  37,152.50 |
| 274.00 | $158,607.50 |
| 117.70 | $  67,100.00 |
| **467.60** | **$262,860.00** |

The expenses incurred during the Third Sub-period are reflected in the following chart:

| THIRD SUB-PERIOD EXPENSES (MAY 1, 2015 – JANUARY 29, 2015) | |
| --- | --- |
| APPEAL TO UNITED STATES COURT OF APPEALS FOR the SEVENTH CIRCUIT | |
| DESCRIPTION | AMOUNT |
| Copies | $   21.90 |
| Filing fee-notice of appeal (NW | 298.00 |
| Filing fee – notice of appeal (PBAI) | 298.00 |
| Messenger delivery | 81.20 |
| Copies | 28.50 |
| Filing fee – bankruptcy court | 157.00 |
| Copies (briefs) | 784.00 |
| Copies | 49.60 |
| Copies | 127.80 |
| **Sub-Total** | **$1,846.00** |

| COLLECTION OF 2013 INTERIM AWARD | |
| --- | --- |
| DESCRIPTION | AMOUNT |
| Certified copies | $   23.50 |
| Filing fee – citation | 80.00 |
| Filing fee – new case | 359.99 |
| Copies | 2.00 |
| Process Server | 59.00 |
| Copies | 28.50 |
| Copies | 39.40 |
| Copies | 16.00 |
| **Sub-Total** | **$  608.39** |

| **GRAND TOTAL** | **$2,454.39** |
| --- | --- |

The following is a summary of the amounts sought, and any and all amounts previously

allowed and paid, for all three periods:

4

| SUB-PERIOD | COMPENSATION SOUGHT | EXPENSES SOUGHT | TOTAL AMOUNT OF COMPENSATION AND EXPENSES ALLOWED TO DATE | TOTAL AMOUNT PAID TO DATE |
|---|---|---|---|---|
| *First Sub-period* December 12, 2012 through May 31, 2013 | $408,530.98 | $0.00 | $408,530.98* | $49,256.51 |
| *Second Sub-period* June 1, 2013 through April 30, 2014 | $775,735.00 | $6,407.92 | $0 | $0 |
| *Third Sub-period* May 1, 2014 through January 28, 2015 | $264,067.50 | $2,566.49 | $0 | $0 |
| **Total Allowance Sought** | **$1,448,333.48*** | **$8,974.41*** | | |

\* The total allowance of compensation and reimbursement of expenses sought is the sum of the amount of the interim allowance awarded for the First Sub-period plus the full amount sought for the Second and Third Sub-periods. The total allowance of compensation and reimbursement of expense listed above do not include the $75,713.25 in compensation and $173.03 in expenses disallowed by the Court in connection with the interim application. Sweports will, of course, receive a credit for the small amount it has paid to date ($49,256.51).

To the extent that the application for allowance of compensation and reimbursement of expenses, and the collection of allowed compensation and expenses, require the expenditure of additional time and funds, Wolf reserves the right to file a supplemental application or supplemental applications for allowance of compensation and reimbursement of expenses.

In support of this First Amended Final Application, Wolf relies upon, and incorporates by reference, the exhibits attached hereto. Wolf also expressly reserves the right to call witnesses, including an expert witness on the subject of the reasonableness of the requested compensation, in support of this First Amended Final Application.

## BACKGROUND

1.      On April 9, 2012, Michael Moody, Michael O'Rourke and John Dore (collectively, the "Petitioning Creditors"), with Wolf serving as their counsel, filed an involuntary chapter 11 petition against Sweports.

5

2.      For more than six months, Sweports vigorously opposed entry of an order for relief, causing counsel for the Petitioning Creditors to expend more than $200,000 in litigation time and expenses.  On November 19, 2012, on the very eve of a scheduled evidentiary hearing on the contested involuntary petition, after extensive discovery, and after Wolf had prepared and completed a lengthy pretrial statement and proposed pretrial order, the Debtor suddenly consented to the entry of an order for relief (Docket No. 82).  The Court signed the Order for Relief on November 21, 2012 and the Order for Relief was entered on the docket on November 26, 2012 (Docket No. 89).

3.      On December 12, 2012, the Office of the U.S. Trustee appointed the Committee. The five-member Committee consisted of the three Petitioning Creditors, Lee N. Abrams and the law firm of Perkaus & Farley, LLC.

4.      On January 14, 2013, the Committee filed an application seeking entry of an order employing Wolf as counsel to the Committee (Docket No. 119).

5.      On March 13, 2013, the Court entered an Order approving the employment of Wolf as counsel to the Committee, effective as of December 12, 2012.  *See* Docket. No. 194 ("Employment Order").  As a condition to the Court's entry of the Employment Order, the Court required that Wolf waive his claim for more than $200,000 in compensation and expenses incurred by Wolf as counsel for the Petitioning Creditors during the gap period.  *See* Bankruptcy Code § 503(b)(3)(A) and (b)(4).  Wolf agreed to the requested waiver.

6.      On August 1, 2013, NW&A filed his 2013 Interim Application.  The Debtor objected to the 2013 Interim Application.

7.      On October 1, 2013, the Court entered an Order granting the 2013 Interim Application in part and denying it in part (Docket No. 435) ("October 2013 Interim Order").

Under the October 2013 Interim Order, the Court allowed aggregate compensation and expenses of $408,530.98, and disallowed $75,713.25 in compensation and $173.03 in expenses.

8.      To date, the Debtor has paid Wolf only $49,256.51.  That payment was made on October 4, 2013, almost 16 months ago.  That is the total amount that Wolf has received to date for more than 25 months of work in the case.  The balance of the amount due and owing to Wolf under the October 2013 Interim Order is $359,274.47.

9.      On February 17, 2014, Wolf and the attorneys working with him as Committee counsel joined the Chicago office of Much Shelist.  On March 7, 2014, the Committee filed its Supplemental Application for Entry of an Order Authorizing the Employment of Much Shelist as Counsel to the Committee Effective as of February 17, 2014 in Substitution for Neal Wolf & Associates (Docket No. 732).  On March 10, the Court entered a minute order denying the foregoing application, stating that it was unnecessary (Docket No. 733).

10.     On April 26, 2014, the Court filed an Order Denying Confirmation of Plan and Statement (Docket No. 752) (the "Order Denying Confirmation").  In its Order Denying Confirmation, the Court denied confirmation of both the Third Modified and Second Amended Plan of the Debtor (the "Debtor's Plan") and the Modified First Amended Plan of the Committee. The Debtor's Plan was the *seventh* plan of reorganization filed by the Debtor in the case.

11.     On April 8, 2014, the U.S. Trustee filed its Motion to Convert or, in the Alternative, to Dismiss Chapter 11 Case and for Other Relief (Docket No. 763) ("Motion to Convert/Dismiss").  The U.S. Trustee set the hearing on the Motion to Convert/Dismiss for April 30, 2014.

12.     On April 30, 2014, the Court entered its Order Dismissing Chapter 11 Case (Docket No. 772).

7

13.      On May 23, 2014, Wolf filed the 2014 Application (Docket No. 788) for legal services performed and expenses incurred during the period from December 12, 2012 through and including April 30, 2014.

14.      On June 18, 2014, the Court entered an order denying the 2014 Application on jurisdictional grounds (Docket No. 797).

15.      On June 19, 2014, Wolf and the law firms with which he had been associated during the pendency of the case filed a joint notice of appeal to the United States District Court (Docket No. 798).

16.      On June 19, 2014, the Court entered its Certification for Direct Appeal to Court of Appeals.

17.      On July 21, 2014, Wolf filed Appellants' Petition for Permission to Prosecute Direct Appeal Pursuant to 28 U.S.C. § 158(d) with the United States Court of Appeals for the Seventh Circuit (CoA Docket No. 11).  The subject Petition was granted by Order of the Court of Appeals on August 8, 2014 (CoA Docket No. 16).

18.      On January 9, 2015, the Court of Appeals entered a Final Judgment (CoA Docket no. 41) (the "Final Judgment") and Decision in favor of Wolf.  The Final Judgment reversed and remanded, and awarded costs to Wolf.

**STATUTORY AND OTHER LEGAL BASES FOR RELIEF**

19.      The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.  The venue of this Case and this Application is proper in accordance with 28 U.S.C. §§ 1408 and 1409.

20.      Wolf files this Application pursuant to Bankruptcy Code §§ 330(a) and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedures, Rule 5082-1 of the

Local Bankruptcy Rules, effective as of January 1, 2012, and applicable provisions of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement Filed Under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58).

21.     Wolf also files this Application pursuant to the January 9, 2015 Final Judgment and Decision of the United States Court of Appeals for the Seventh Circuit.

22.     Finally, Wolf seeks allowance of compensation and reimbursement of expenses for all attorneys' fees and costs incurred by him in connection with the prosecution and defense of his 2014 Application, and the October 2013 Interim Order, including but not limited to all attorneys' fees and costs associated with the appeal to the United States Court of Appeals for the Seventh Circuit and all attorneys' fees and costs associated with the attempt to collect the amount of the October 2013 Interim Order.  Many of the legal issues associated with a professional's right to recover such attorneys' fees and expenses are currently before the United States Supreme Court in *Baker Botts, L.L.P., et al., Petitioners v. ASARCO, L.L.C.,* No 14-103, on writ of certiorari to the United States Court of Appeals for the Fifth Circuit.  For the benefit of the Court, we attach as **Exhibit I** a true and correct copy of the Brief for the United States as Amicus Curiae Supporting Reversal, filed by the Solicitor General of the United States, which articulates the case for the allowance of such fees and expenses.

23.     From the date of commencement of this case as an involuntary chapter 11 case, this case was a difficult, labor-intensive, litigation-intensive case.  As we note earlier in this application, the Debtor objected to the entry of an order for relief and put the Petitioning Creditors (to which the Debtor owed legitimate, old, unpaid debts) through nine months of costly litigation before finally consenting to the entry of an order for relief on the

9

eve of trial.  During that eight-month period, the Debtor routinely shirked and flaunted the

Federal Rules of Civil Procedure, requiring the Petitioning Creditors to make multiple trips

to the courthouse in connection with motions to compel.   While the Debtor's tactics cost the

Petitioning Creditors valuable time, they cost Wolf more than $200,000 in legal fees, which

Wolf was required to waive as a condition to his employment as counsel for the Official

Committee of Unsecured Creditors.

24.     The Debtor's post-order for relief tactics did not change.  After consenting to

the entry of an order for relief, Sweports continued to flaunt both its duties as a debtor in

possession and the discovery rules.  The record is replete with evidence of fraudulent

transfers, disregard of corporate obligations, and attempts to hide and/or obfuscate facts by

the Debtor and its controlled subsidiary.  Time and again the Committee was compelled to

bring motions to compel that should have been unnecessary.  Moreover, in the roughly one-

year period between entry of the order for relief and the commencement of the confirmation

hearing, the Debtor filed seven separate plans of reorganization and multiple faulty

disclosure statements.  Ultimately, the Committee was compelled to prepare for and try a

confirmation hearing consuming more than two weeks.   Of this two-week confirmation

hearing, the Debtor's case for confirmation of its plan consumed all but one day.  The

Committee took only one day to present its case in support of its plan.

25.     The services rendered by Wolf and his colleagues on behalf of the Committee

were actual and necessary for the proper performance of the Committee's statutory duties

under Section 1103(c).  At every step of the way, Sweports resisted the Committee's efforts

to perform its duties, making the performance of those duties difficult and expensive.  The

Committee was entitled to represent its constituents (the general unsecured creditors) by

seeking an end result different than that which was advocated by the Debtor.  Although this

Court ultimately disagreed with the Committee's approach, the services rendered by the

attorneys for the Committee were necessary to the proper representation of the Committee.

26.     Wolf was not employed on a contingent fee basis.  Neither the Bankruptcy

Code itself, nor the cases that had been decided under the Code and that interpret the Code,

require that Wolf be punished because the Court declined to confirm the Committee's plan.

As noted above, all but one day of the confirmation hearing was consumed by the Debtor's

case for confirmation of its plan.

27.     Courts are not to consider these matters in hindsight.  Indeed, the Code itself

provides that,

> (3)  In determining the amount of reasonable compensation to be awarded to
> an examiner, trustee under chapter 11, or professional person, the court shall consider
> the nature, the extent, and the value of such services, taking into account all relevant
> factors, including –
>
> ***
>
> (C)  whether the services were necessary to the administration of, or
> beneficial *at the time at which the service was rendered* toward the
> completion of, a case under this title.

(Emphasis added)

28.     Indeed, as Bankruptcy Judge Ronald Barliant noted in *In re Lifschultz Fast

Freight, Inc.*, 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992):

> In short, the modern construction of "benefit to the estate" that attorneys' services
> must result in monetary benefit to the estate is not an application of the pre-Code
> doctrine of "benefit to the estate"; rather it is a judicially created descendant of the
> very different doctrine of "economy" or "conservation of the estate."  But that
> doctrine was overruled by section 330 of the Code and should not be re-introduced
> into compensation analysis under cover of the "benefit to the estate" rubric.  Actually
> there is no need to even use the phrase "benefit to the estate."  The issue under
> section 330(a) is whether services for which compensation is sought are "necessary
> services."  Necessary services have always included services that aid in the

administration of the case and help the client fulfill duties under bankruptcy law, whether or not those services result in a monetary benefit to the estate.

Significantly, *Lifschultz* was a case that commenced with the filing of an involuntary petition. The Court entered an order for relief and later ordered the appointment of a chapter 11 trustee. The United States Trustee appointed an official committee of unsecured creditors which then filed its own plan of reorganization. Upon motion of the chapter 11 trustee, the case was converted to a chapter 7 case and, hence, the committee's plan was never confirmed. When counsel for the committee filed its fee application, the trustee objected, arguing that the work done in preparation of a plan and disclosure statement did not benefit the estate. Judge Barliant categorically rejected the trustee's objection stating, among other things:

> The committee was entitled to represent its constituents by seeking to administer this estate in a manner different thatn that favored by the trustee. Even though this Court disagreed with the committee, **\*489** its attorneys services were necessary to the proper representation of the committee.

488-89 (Id., at 488-489).

29. Citing *Lifschultz*, among other decisions, Bankruptcy Judge John H. Squires placed an identical interpretation upon the compensation sections of the Bankruptcy Code. Noting that "[h]indsight is always 20/20," he rejected a committee's opposition to the fee application of debtor's counsel. Judge Squires' comments are instructive:

> [47] Section 330 does not authorize compensation only to professionals who take successful actions. To the contrary, if there was a reasonable chance of success which outweighed the cost in pursuing the action, then fees relating thereto are compensable. *See Jefsaba,* 172 B.R. at 799. Hindsight is always 20/20, but no one could prejudge whether or not the Court would either grant the Committee's motion or sustain the Debtors' objections until after all the evidence was admitted. The Court does not expect an attorney for a debtor to succeed in every endeavor he undertakes on behalf of the debtor. Needler's representation was on an hourly rate basis, not a contingent fee arrangement. But, the endeavor for which the estate is expected to pay must be reasonably calculated to produce a benefit to the estate. *See*

> *In re Hunt,* 124 B.R. 263, 267 (Bankr.S.D.Ohio 1990)  There was a definite benefit,
> though noneconomic, to the estates in having a full trial on the merits on the issue of
> whether the facts and circumstances warranted the appointment of a Chapter 11
> trustee.

A significant number of reported decisions, in this and other districts, support the principles

enunciated by Judges Barliant and Squires.  *See, e.g., In re Gluth Bros. Construction, Inc.,* 459

B.R. 351, 370 (Bankr. W.D. Ill. 2011) (since the standard is whether services were "reasonably

likely" to benefit the estate, the determination must be based on the circumstances at the time the

services were performed, not simply in hindsight) (*citing In re Taxman Clothing Co.,* 49 F.3d

310, 315 (7th Cir. 1995) (Posner, C.J.); *In re Quigley Company, Inc.,* 500 B.R. 347, 357 (Bankr.

S.D.N.Y. 2013) (a court does not determine "reasonableness" through hindsight or penalize

counsel simply because it rendered services prosecuting an application that failed or opposing

one that succeeded) (*citing In re Brous*, 370 B.R. 563, 570 (Bankr. S.D. N.Y. 2007).

## EXHIBITS TO APPLICATION

30.    To assist the Court, the Debtor, the U.S. Trustee and the various parties in

interest in analyzing the fees and expenses of Wolf and his colleagues, Wolf has included

the following exhibits:

a.    **Exhibit A** is the 2013 Interim Application, which covers the First Sub-

Period (December 12, 2012 through May 31, 2013).

b.    **Exhibit B** is the 2014 Application, which covers the Second Sub-

Period (June 1, 2013 through April 30, 2014).  This Exhibit contains, among other

things, both a summary, by category, of the services that were rendered, and detailed

descriptions of the services that were rendered each day by each timekeeper (in tenth

of one hour units).

c.      **Exhibit C**, which is filed in accordance with Local Rule 5082-1(B)(1)(e), is a listing of all of the timekeepers who rendered services for the Committee during the Second and Third Sub-periods (at both NW&A and Much Shelist), together with the standard hourly rate of each such timekeeper, the number of hours expended by that timekeeper, and the total compensation sought for the services of that timekeeper.

d.      **Exhibits D-1** and **D-2**, which are filed in accordance with Local Rule 5082-1(B)(1)(a), contain lists of all of the categories among which Wolf and his colleagues allocated their case-related time and services, and the total hours and fees that those individuals allocated to each such category, during the Second and Third Sub-periods.  Because of differences in the accounting systems of NW&A and Much Shelist, minor changes had to be made these allocations after NW&A joined Much Shelist.  Exhibit D-1 reflects the allocations made prior to February 16, 2014, while Wolf and his colleagues were still at NW&A.  Exhibit D-2 sets forth the allocations made subsequent to February 16, 2014, after Wolf and his colleagues joined Much Shelist.

e.      **Exhibits E-1** and **E-2**, which are filed in accordance with Local Rule 5082-1(B)(1)(d), provide greater detail.  They contain a list of each professional who performed work in a given activity category during the Second and Third Sub-periods, the hours that were allocated by such professional to such category, and the total compensation sought for the services allocated by that professional to such category.  Like Exhibits D-1 and D-2, Exhibits E-1 and E-2 respectively provide these allocations for the periods before and after NW&A joined Much Shelist.

14

f.    **Group Exhibits F-1, F-2,** and **F-3,** which are filed in accordance with Local Rule 5082-1(B)(1)(b) and (C), contain detailed time entries for the Second and Third Sub-periods.  Exhibit F-1 contains the time entries made at NW&A between June 1, 2013 and February 16, 2014, when NW&A joined Much Shelist.  Exhibit F-2 contains time entries made at Much Shelist between February 17, 2013 and April 30, 2014.  Exhibit F-3 contains time entries for the entire Third Sub-period, from May 1, 2014 through January 28, 2015.  These detailed time entries set forth:  (i) the date a particular task was performed; (ii) the name of the professional who performed the subject task; (iii) a brief description of the task; and (iv) the time expended on the task, reflected in six-minute increments.  For the period from September 2013 through February 2014, Wolf added two additional billing activities to assist the Court: Confirmation Hearing (Matter No. 9 at NW&A) and Claims (Matter No. 10 at NW&A and Matter No. 6 at Much Shelist (called "Claims Objections")).

g.    **Exhibit G**, which is filed in accordance with Local Bankruptcy Rule 5082-1(B)(1)(g), is a summary of the expenses for which reimbursement is sought broken down by expense category.  Exhibit G provides a breakdown of expenses for the Second and Third Sub-periods only, and does not separate the expenses incurred by NW&A and Much Shelist.

h.    **Exhibit H** is the Declaration of Neal L. Wolf in support of the First Amended Final Application.

31.    Wolf submits this Application under the standards set forth in Bankruptcy Code § 330, which provides, in part, that:

"the court may award to … a professional person employed under section 327 or 1103 … reasonable compensation for

> actual, necessary services rendered by the … attorney and by
> any paraprofessional person employed by any such person; and
> reimbursement for actual, necessary expenses."

32.     Wolf and his colleagues have provided high quality services to the Committee
in a case involving substantial litigation, much discovery, many issues, many court
appearances, extensive negotiations, and a confirmation hearing of approximately two
weeks.  Many of the issues involved complex areas of bankruptcy and intellectual property
law.  The standard hourly rates charged by both NW&A and Much Shelist are reasonable
and commensurate with or below those of other bankruptcy attorneys with similar levels of
experience.  Wolf has, at all times, staffed the case leanly, in order to avoid duplication of
effort.  The Court should also consider the degree of economic risk Wolf undertook in
connection with his representation of the Committee.

33.     That economic risk has been borne out by the actual facts and circumstances of
this case.

## DESCRIPTION OF SERVICES RENDERED

34.     For this First Amended Final Application, Wolf adopts and incorporates by
reference the descriptions contained in the 2013 Interim Application (Exhibit A) and 2014
Application (Exhibit B).  These descriptions cover the work performed during the First and
Second Sub-periods.  Those applications also include detailed time entries for each and
every component of work performed by Wolf and his colleagues.

35.     During the Third Sub-period, as noted above, the legal work performed and
expenses incurred by Wolf related exclusively to (1) matters associated with the 2014
Application and the jurisdictional objections raised thereto, (2) appeal from this Court's
June 18, 2014 order denying compensation and reimbursement of expenses on jurisdictional
grounds and (3) efforts by Wolf to collect the amount of the First Interim Order under

16

applicable state law, which have been vigorously opposed by Sweports.  Detailed time
entries reflecting these legal services are contained in Group Exhibit F.

### NOTICE; NO PRIOR APPLICATION; NO SHARING OF COMPENSATION

36.     Wolf has served this First Amended Final Application and notice thereof on:
(a) counsel to the Debtor; (b) the U.S. Trustee; and (c) any other persons who have formally
appeared and requested electronic service in this case pursuant to Bankruptcy Rule 2002 and
local rule.  All other persons, including the Debtor's creditors as reflected in the Schedule F
previously filed by the Debtor's counsel on November 28, 2012, were served by United States
mail with a separate notice of this Application and the related hearing date.  The notice contains
instructions on obtaining a copy of the entire Application at no additional charge.  Wolf submits
that no other or further notice need be given under the circumstances.

37.     In connection with the compensation and expenses sought herein, neither
Wolf nor NW&A nor Much Shelist have received or been promised any compensation for
services rendered or to be rendered in any capacity in connection with this case other than as
set forth herein.

38.     No agreement or understanding exists between Wolf or NW&A or Much
Shelist and any third party for the sharing of compensation.

**WHEREFORE**, Wolf respectfully requests that the Court enter an Order:  (1) allowing
him final compensation in the amount of $1,448,333.48 and reimbursement of expenses in the
amount of $8,974.41, which together aggregate $1,457,307.89, (2) entering a final judgment in
favor of Wolf and against Sweports in the amount of such allowed compensation and
reimbursement of expenses, and (3) granting such other relief as is just and proper.

Dated: March 9, 2015

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

By:   */s/ Neal L. Wolf*
    Neal L. Wolf (ARDC No.6186361)
    MUCH SHELIST, P.C.
    191 North Wacker Drive, Suite 1800
    Chicago, Illinois 60606
    Main:   (312) 521-2000
    Fax:   (312) 521-2100
    Email:  nwolf@muchshelist.com

*Attorneys for the Official Committee of
Unsecured Creditors*