**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SWEPORTS, LTD., | ) | No. 12 B 14254 |
| | ) | |
| Debtor. | ) | Judge Goldgar |

## <u>MEMORANDUM OPINION</u>

This chapter 11 case, in which Sweports, Ltd. was the debtor, ended three years ago when the case was dismissed. After dismissal, counsel for the creditors' committee, Neal Wolf, and the committee's financial consultant, Pierre Benoit, applied to be compensated for their work. The applications were denied as moot because the case had been dismissed, but that decision was reversed, and the case was remanded to address the applications. On remand, the applications were granted in part. Wolf and Benoit were awarded fees and expenses.

Wolf and Benoit then registered the fee award with the Illinois state court as a judgment and spent the next year and a half there trying to collect from Sweports. In particular, Wolf and Benoit sought to levy on the stock of Sweports' only subsidiary. But their efforts met with little success, in part because other Sweports creditors asserted claims to the stock. Impatient with their lack of progress in the state court, Wolf and Benoit returned to the bankruptcy court last month and had writs of execution issued directing the U.S. Marshal to levy on the stock.

Sweports and two of its creditors, Anthony DiVincenzo and Ariel Weissberg, have now moved to quash the writs. The writs were stayed pending a decision on the motions. Because the court has no jurisdiction over the collection of the fee award, the motions will be granted and the writs quashed.

Case 12-14254   Doc 881   Filed 02/28/17   Entered 02/28/17 14:25:40   Desc Main
Document    Page 2 of 12

## 1. Jurisdiction

This court had jurisdiction of the Sweports bankruptcy case under 28 U.S.C. § 1334(a). Post-dismissal, the court had ancillary jurisdiction to determine the fees and expenses of Wolf and Benoit. *In re Sweports, Ltd.*, 777 F.3d 364, 367 (7th Cir. 2015). The court has jurisdiction to consider the current motions because a court always has jurisdiction to determine its jurisdiction. *Bayo v. Napolitano*, 593 F.3d 495, 500 (7th Cir. 2010); *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 775 (7th Cir. 2002).

## 2. Background

The relevant facts are drawn from the parties' papers; the opinion of the court of appeals; the docket in the Sweports bankruptcy case and other post-dismissal papers in the case; and the dockets of the Circuit Court of Cook County, Illinois in *Wolf v. Sweports, Ltd.*, No. 15 L 50717 (Cir. Ct. Cook Cty.), *Benoit & Assocs. v. Sweports, Ltd.*, No. 15 L 50749 (Cir. Ct. Cook Cty.), and *Weissberg & Assocs., Ltd. v. Sweports, Ltd.*, No. 14 L 11320 (Cir. Ct. Cook Cty.).[1] No facts are in dispute.

### a. Proceedings in the Bankruptcy Case

Sweports is a holding company that owns patents and has a subsidiary, UMF, that makes antimicrobial cleaning products using the patented technology. In 2012, several judgment creditors filed an involuntary chapter 11 petition against Sweports. After some initial resistance, Sweports consented to an order for relief. The U.S. Trustee then appointed a committee of

---

[1]    A court can take judicial notice of its own records as well as the records of other courts in related matters. *In re Meltzer*, 516 B.R. 504, 506 n.2 (Bankr. N.D. Ill. 2014); *see also In re Caesars Entm't Operating Co.*, 561 B.R. 457, 460 (Bankr. N.D. Ill. 2016) (drawing on papers filed in the case to "'further [the] procedural narrative'" (quoting *Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012)).

unsecured creditors. The committee sought and received approval to retain Wolf as its counsel and Benoit as its financial consultant.

Sweports proposed a plan of reorganization, and later, when exclusivity lapsed, the committee did the same. The court held a combined confirmation hearing but ultimately denied confirmation of both plans. Because the case had been pending for nearly two years, the U.S. Trustee was invited to move to convert or dismiss it. He accepted the invitation, and when no party sought conversion or opposed dismissal, the case was dismissed and closed.

After the case was dismissed and closed, Wolf filed his second and final application for compensation in the case. Benoit filed his own final application a week later. Sweports objected to the applications, arguing that the court lacked jurisdiction to consider them, and the applications were denied on jurisdictional grounds. *See In re Sweports, Ltd.*, 511 B.R. 522, 524 (Bankr. N.D. Ill. 2014). "Because the case has been dismissed," this court reasoned, "there is no longer an estate from which Wolf and Benoit can be paid and so no point in considering whether and how much they should be paid from it. The applications are moot." *Id.*

Wolf and Benoit appealed directly to the court of appeals, and the court of appeals reversed. *Sweports*, 777 F.3d at 365-68. Although there was no longer an estate from which Wolf and Benoit could be paid, the court concluded that the estate's debts became debts of Sweports upon dismissal. *Id.* at 366. And dismissal did not prevent the bankruptcy court from at least determining "that Wolf had a valid claim to a fee in the amount he was seeking." *Id.* at 367.[2] In addition to "its ordinary jurisdiction," the court said, bankruptcy courts have "a 'clean-up' jurisdiction ('ancillary' jurisdiction, it is commonly called) to take care of minor loose ends."

---

[2]    To simplify its discussion, the court of appeals treated Wolf as if he were the only appellant. *Id.* at 365.

*Id.* at 367.  In this instance, "[t]here was a loose end, left dangling – Wolf's claim for fees."  *Id.*

The case was therefore remanded for consideration of Wolf's and Benoit's applications.

On remand, the case was reopened and the applications were briefed.  Over Sweports' objections, the applications were granted in part and denied in part.  Wolf was awarded final compensation of $862,312.43 in fees and $6,234.89 in expenses.  Benoit was awarded final compensation of $94,158.75 in fees and $1,659.38 in expenses.  There was no appeal.  The case was re-closed.

### b.  Proceedings in the State Court

Wolf and Benoit then commenced collection efforts against Sweports in Illinois state court.  Almost immediately, though, their collection proceedings became complex, entangled with the efforts of other Sweports creditors to get paid.

In October 2015, Wolf and Benoit registered their fee award with the Circuit Court of Cook County as a federal judgment in accordance with 735 ILCS 5/12-501 (2014).  *See Wolf v. Sweports, Ltd.*, No. 15 L 50717 (Cir. Ct. Cook Cty.); *Benoit & Assocs. v. Sweports, Ltd.*, No. 15 L 50749 (Cir. Ct. Cook Cty.).  Wolf and Benoit then had citations to discover assets issued to Sweports.

They were not alone.  The year before, Weissberg, who had represented Sweports in its bankruptcy case and had not been paid either, brought an action of his own against Sweports. *Weissberg & Assocs., Ltd. v. Sweports, Ltd.*, No. 14 L 11320 (Cir. Ct. Cook Cty.).  In November 2015, a judgment for $600,000 was entered in Weissberg's favor.  He too, had a citation to discover assets issued to Sweports.

In December 2015, Wolf and Benoit sought to intervene in the *Weissberg* action as

-4-

adverse claimants, were allowed to do so, and filed adverse claims. Weissberg filed parallel

motions to intervene as an adverse claimant in the *Wolf* and *Benoit* matters, was allowed to

intervene, and filed adverse claims in each. Benoit moved to intervene in the *Wolf* matter; his

motion was granted. (Whether Wolf moved to intervene in the *Benoit* matter is unclear, but

presumably he did. The docket reflects that early on in the matter Wolf filed a "counterclaim.")[3]

Around the same time the parties were seeking to intervene in each other's matters, each

party filed a turnover motion. Weissberg moved in the *Weissberg* matter for the turnover of all

of Sweports' assets, including the UMF stock. Wolf filed a turnover motion in the *Wolf* matter

and also sought a judgment lien against Sweports. Benoit filed a turnover motion of his own in

the *Benoit* matter. Wolf and Benoit both sought turnover not only of the UMF stock but also of

the patents Sweports owned.

In a December 2015 order entered in the *Wolf* matter, the state court granted Wolf his

judgment lien as well as a lien under 735 ILCS 5/2-1402(k-10) (2014) on the stock and the

patents, though "without prejudice to . . . a determination of priority between any party asserting

an adverse claim . . . ." Wolf's turnover motion was continued. The court set a deadline for

other parties to file adverse claims to Sweports' assets.

The deadline resulted in the filing of at least one other adverse claim. DiVincenzo, yet

another lawyer who had represented Sweports and not been paid, filed an adverse claim for

$935,180.20 in the *Wolf* matter and apparently in the *Benoit* matter as well. In his claim,

DiVincenzo noted that he had possession of 19,635 shares of Sweports' UMF stock. He asserted

---

[3]    The nature of this "counterclaim" is unclear, and there is no way to find out. The dockets of most civil matters pending in the Circuit Court of Cook County are accessible via the internet (www.cookcountyclerkofcourt.org, select "online case info" and then "full electronic docket search"), but the actual papers filed in those matter are not, and the docket entries themselves are often cryptic.

a "general or retaining lien" against the stock.[4]

Meanwhile, in November 2015 Sweports had moved to vacate the registrations of the
Wolf and Benoit fee award as a federal judgment. Sweports argued that the award was not a
judgment because it was neither final nor enforceable. In February 2016, the state court agreed in
a lengthy written decision. The registrations were vacated.

### c. Back to the Bankruptcy Court

The vacatur brought Wolf and Benoit back to the bankruptcy court the next month with
motions under Bankruptcy Rule 9024, Fed. R. Bankr. P. 9024, seeking clarification of the fee
award. Wolf in particular sought an order declaring that the fee award was a judgment,
specifically a judgment in his and Benoit's favor and against Sweports.

Both motions were denied on the ground that no clarification was necessary. But in
ruling on Wolf's motion, the court did observe on the record that the award met the definition of
"judgment" in Rule 54(a) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 54(a)
(made applicable by Fed. R. Bankr. P. 7054, 9014(c)).[5]

### d. Back to the State Court

Armed with this observation, Wolf and Benoit returned to the state court and moved for

---

[4]     Several other lawyers also sought to intervene in the *Wolf* matter as adverse
claimants. Michael J. O'Rourke, Michael C. Moody, John Dore, and a law firm, O'Rourke,
Katten & Moody, made an oral motion to intervene. What happened with the oral motion is
unclear. Another lawyer, Robert Queeney, also seems to have filed an adverse claim in the *Wolf*
and *Benoit* matters.

[5]     The court might also have noted that the award met the definition of "judgment"
in Bankruptcy Rules 9001(7) and 9002(5). *See* Fed. R. Bankr. P. 9001(7), 9002(5); *see In re
Salazar*, No. 15-13194, 2016 WL 7377043, at *2 (Bankr. D.N.M. Dec. 19, 2016) (making this
observation about a chapter 13 fee award). In its decision, the court of appeals called the fee
award "to which Wolf was and is entitled" a "judgment." *Sweports*, 777 F.3d at 367.

reconsideration of the decision vacating the registrations. In September 2016, the state court

granted their motions and reinstated the judgments.

Undaunted, Sweports then moved to reconsider the order granting Wolf's and Benoit's

motions for reconsideration. The Sweports motions to reconsider were argued in late December

2016. The state court took the motions under advisement and set February 16, 2017, as the

ruling date.[6/] The state court also stayed the motions for turnover pending in the Wolf and Benoit

matters.

### e. Back to the Bankruptcy Court Again

In apparent frustration, Wolf and Benoit returned once more to the bankruptcy court and

on January 4, 2017, had the clerk issue writs of execution to the U.S. Marshal.[7/] The writs were

directed to DiVincenzo's law firm and sought seizure of the UMF stock in DiVincenzo's

possession. This prompted Sweports and Weissberg to move in the state court to have Wolf and

Benoit held in civil contempt on the theory that the issuance of the writs violated the state court's

order staying Wolf's and Benoit's motions for turnover.[8/]

_____

[6/]      What happened on the ruling date is unclear – the docket entries are unhelpful –
but it appears that (a) the court did not rule on the motions to reconsider, (b) the stay of the
turnover motions remains in effect, and (c) everything has been continued for a month. In the
*Wolf* matter, the docket entry for February 16 has this unexplained entry: "Strike or withdraw
motion or petition - allowed." An entry for February 15, however, says: "Order to turnover
funds - continued." March 16, 2017, is shown as the next court date. The docket in the *Benoit*
matter has no entry at all for February 16, but entries for February 15 say: "Order to turnover
funds - continued" and "case set on status call - continued," with March 16, 2017, shown as the
next court date.

[7/]      Frustration is a fair characterization given how Wolf and Benoit sum up the
proceedings: "[D]espite diligent and timely efforts by Wolf and Benoit to collect [the]
judgments, the State Court collection efforts languish while Sweports litigates and re-litigates its
specious attacks on those judgments." Wolf and Benoit Comb. Resp. at 3.

[8/]      The contempt motions also appear to have been continued to mid-March.

The next day, Sweports, DiVincenzo, and Weissberg moved in this court for an order quashing the writs or alternatively abstaining in favor of the state court proceedings. The movants contend that (a) the court lacks subject matter jurisdiction because Wolf and Benoit's collection efforts are *in rem* proceedings involving the UMF stock, and the state court was the first to acquire jurisdiction over the stock; (b) the proceedings in the bankruptcy court are barred by judicial estoppel; (c) the proceedings are barred by the "prior pending action" doctrine; and (d) even if the proceedings are not barred, abstention is appropriate under either 28 U.S.C. §§ 1334(c)(1) or (c)(2). Wolf and Benoit oppose the motions.

### 3. Discussion

The motions will be granted. The movants are right that this court lacks subject matter jurisdiction to entertain Wolf and Benoit's collection proceedings – but for a reason different from the one the movants offer. The court lacks subject matter jurisdiction to enforce the fee award because the Seventh Circuit said in its opinion reversing the denial of Wolf's and Benoit's applications that this court's jurisdiction does not extend to enforcement of an award.

Federal courts ordinarily gain the power to decide disputes through a specific statutory grant of subject matter jurisdiction. Sometimes, though, that power comes from a common law concept called "ancillary jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994); 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice & Procedure* § 3523.2 at 212-13 (3d ed. 2008). Ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen*, 511 U.S. at 378. Though its contours are neither "rigid [n]or precise," ancillary jurisdiction has two purposes: "(1) to

-8-

permit disposition by a single court of claims that are, in varying respects and degrees, factually

interdependent, and (2) to enable a court to function successfully, that is, to manage its

proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379-80 (citations omitted).

The second category – "generally referred to as 'ancillary enforcement jurisdiction,'"

*Hudson v. Coleman*, 347 F.3d 138, 142 (6th Cir. 2003) – permits a court to enforce its judgment

once the action that produced it has ended. *Peacock v. Thomas*, 516 U.S. 349, 356 (1996); *see*

*also Lucille v. City of Chicago*, 31 F.3d 546, 548 (7th Cir. 1994); *Ligurotis v. Whyte*, 951 F.2d

818, 821 (7th Cir. 1992); *Ridgewood Indus. Inc. v. Ridgewood Indus., U.S.A., Inc.*, 575 F. Supp.

244, 244 (N.D. Ill. 1983).  Without jurisdiction to do so, the Supreme Court has said, "'the

judicial power would be incomplete and entirely inadequate to the purposes for which it was

conferred by the Constitution.'"  *Peacock*, 516 U.S. at 356 (quoting *Riggs v. Johnson County*, 73

U.S. (6 Wall.) 166, 187 (1868)).

In a civil action, ancillary jurisdiction confers on a district court not only the power to

enforce its judgment but also the power to entertain related disputes over attorney's fees and

costs. *Federal Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004) (noting

that "ancillary jurisdiction exists over attorney fee disputes collateral to the underlying

litigation"); *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299-1300 (7th Cir. 1995).

Addressing fees and costs has even been called "[o]ne of the best-established uses of ancillary

jurisdiction."  *See* 13 Charles Alan Wright, et al., *supra*, § 3523.2 at 218-19 (stating that

"[a]ncillary jurisdiction supports disputes concerning costs and fees for the case that invoked

federal subject matter jurisdiction").[9]

---

[9]      Seventh Circuit decisions sometimes call this "ancillary" jurisdiction, *see, e.g.,*
*Shapo v. Engle*, 463 F.3d 641, 644 (7th Cir. 2006), sometimes "supplemental" jurisdiction, *see,*
*e.g., Goyal v. Gas Tech. Inst.*, 718 F.3d 713, 717 (7th Cir. 2013), and sometimes both, *see, e.g.,*

In this case, however, the Seventh Circuit limited the bankruptcy court's ancillary jurisdiction over Wolf's claim for fees and expenses. In finding jurisdiction to address Wolf's application despite the dismissal of the underlying bankruptcy case, the court of appeals distinguished between a determination of Wolf's fees on the one hand and an order to pay them on the other. *Sweports*, 777 F.3d at 365. Indeed, the court called "critical" the distinction "between determining an entitlement to fees and ordering payment of fees," faulting this court for having "missed" it. *Id.* The court stressed that Wolf was entitled "to pursue in the bankruptcy court his request for an award (*not payment, but determination of what he is owed*) of fees for his services . . . ." *Id.* at 368 (emphasis added).

With that determination, though, the bankruptcy court's jurisdiction post-dismissal would end. Rather than enforce the fee award in the bankruptcy court, Wolf would have to "sue Sweports in state court." *Id.* at 367. Repeatedly, in fact, the court of appeals stressed that this court had jurisdiction only because Wolf was "seeking . . . an order that he can use to obtain cash *elsewhere*." *Id.* (emphasis added). "The judgment to which Wolf was and is entitled," the court said, "would merely establish a debt; to collect it he will undoubtedly have to initiate a collection suit in state court." *Id.*; *see also id.* (stating that Wolf needed a ruling from the bankruptcy court "to be able to enforce the entitlement in state court").[10]

---

*Baer*, 72 F.3d at 1299-1300 & nn. 5-6. The terminology problem may stem from the 1990 codification of one aspect of ancillary jurisdiction as "supplemental jurisdiction" in 28 U.S.C. § 1367. *See* 13 Charles Alan Wright, et al., *supra*, § 3523.1 at 212-13.

[10]   This is the standard reading of the *Sweports* opinion. *See, e.g., Morgan & Bley, Ltd. v. Victoria Grp., Inc.*, No. 14 C 6567, 2015 WL 2258416, at *4 (N.D. Ill. May 11, 2015) (quoting the opinion's description of the "'critical difference' between 'determining an entitlement to fees and ordering payment of fees'"); *Salazar*, 2016 WL 7377043, at *4 ("In *Sweports*, the Seventh Circuit opined that the appropriate course of action is for the bankruptcy court to rule on the allowability of fees charged in a bankruptcy case, and then for the professional to go to state court to collect any unpaid fees."); 1 Robert E. Ginsberg & Robert D.

Confining the bankruptcy court's post-dismissal jurisdiction to the awarding of fees fits with the court of appeals' description of ancillary jurisdiction as no more than "'clean-up' jurisdiction," the power "to take care of minor loose ends." *Sweports*, 777 F.3d at 367. Wolf's application for compensation, the court said, was "a loose end, left dangling." *Id.* Wolf's and Benoit's applications were treated as such on remand: the applications were briefed and decided in a matter of months (the decision would have been issued more quickly but for the objections filed), and a fee award was entered. Enforcement of that award, by contrast, has generated extensive, multi-party litigation in the state court that has continued for more than a year and half. Enforcement been no "minor loose end."[11]

In opposing the motions to quash, Wolf and Benoit fail to address the "critical" distinction *Sweports* drew. *Sweports*, 777 F.3d at 365. In fact, they ignore the decision entirely. But this court enjoys no such luxury. As a decision of the court of appeals for this circuit, *Sweports* is binding and must be followed. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004); *United States v. Foster*, No. 07 CR 772, 2012 WL 2863252, at *5 (N.D. Ill. July 9, 2012). As if that were not enough, the decision is one in this very case; it therefore constitutes the law of the case. Absent exceptional circumstances (and there are none), proceedings in this court must adhere to its principles. *Greeno v. Daley*, 414 F.3d 645, 656 (7th

---

Martin, *Ginsberg & Martin on Bankruptcy* § 4.05[D][1] at 4-136 (Susan V. Kelley, ed., 2016-3 Supp.) (noting that under the decision "the bankruptcy court had authority to allow (but not order paid) the fees of committee professionals"); 10 William L. Norton III, *Norton Bankruptcy Law & Practice 3d* 1789 (2016) (describing the decision as holding that "[a] bankruptcy court has jurisdiction to make an award of fees for which the attorney could seek collection in state court").

[11]      In a February 23, 2016 order in the *Weissberg* matter denying several motions (including one from Benoit) to vacate Weissberg's judgment against Sweports, the state court observed that Sweports "has numerous creditors," and "[t]here is obviously some serious maneuvering afoot to see which creditor will be the first to swoop down on Sweports' remaining assets." The court likened the competing creditors to "the pack circling over the carcass."

Cir. 2005); *Law v. Medco Research, Inc.*, 113 F.3d 781, 783 (7th Cir. 1997).

Because the court of appeals made plain in its opinion that this court's ancillary jurisdiction post-dismissal extends only to determining a professional's compensation, not to ensuring payment, the court lacks subject matter jurisdiction over Wolf and Benoit's collection efforts.[12] The writs of execution will therefore be quashed.[13]

## 4.  Conclusion

The motions of Sweports, Ltd., Anthony DiVincenzo, and Ariel Weissberg to quash the writs of execution issued on January 2017, are granted.  The writs are quashed.  A separate order will be entered consistent with this opinion.

Dated: February 28, 2017

A. Benjamin Goldgar
United States Bankruptcy Judge

---

[12]    Given the parties' complex litigation in the state court, litigation raising purely state law issues, abstention is a tempting alternative.  The movants argue for that alternative.  But they urge abstention under sections 1334(c)(1) or (2), and abstention is possible under those provisions only when a bankruptcy court first has subject matter jurisdiction under section 1334(b).  *Raytech Corp. v. Stefanutti* (*In re Raytech Corp.*), 238 B.R. 241, 243 (Bankr. D. Conn. 1999); *Fedders N. Am., Inc. v. Branded Prods. Inc.* (*In re Branded Prods., Inc.*), 154 B.R. 936, 943 n.15 (Bankr. W.D. Tex. 1993); *see Lindsey v. O'Brien, Tanski, Tanzer & Young* (*In re Dow Corning Corp.*), 86 F.3d 482, 497 (6th Cir. 1996) ("The abstention provisions of 28 U.S.C. § 1334(c) qualify Section 1334(b)'s broad grant of jurisdiction.").  With the *Sweports* bankruptcy case long dismissed, the court has no jurisdiction under that section.  If some other abstention doctrine applies here, the movants have not identified it.

[13]    Wolf and Benoit may have brought this on themselves.  The jurisdictional distinction the court of appeals drew was one they suggested in their opening brief on appeal.  *See In re Sweports, Ltd.*, No. 14-2423 (7th Cir.), Dkt. No. 23 at 6 ("Appellants seek reversal . . . so that Appellants' final fee and expense applications can be considered . . . .  Appellants have not requested and do not request enforcement by the Bankruptcy Court of any final order or judgment on their Applications.").  Hence the judicial estoppel argument Sweports and DiVincenzo make.

-12-